### Case No. 4,329.

**ELDREGE v. CHACON.**

[Crabbe, 296.][1]

District Court, E. D. Pennsylvania. Dec. 12, 1839.

[1] [Reported by William H. Crabbe, Esq.]

Mr. Oakford, for plaintiff.

Mr. Ingraham, for defendant.

HOPKINSON, District Judge. The question to be decided is whether, on the evidence, the defendant, the endorser of the note, is or is not discharged from his responsibility for the payment thereof. A preliminary objection has been taken to the protest, as not sufficiently showing that notice was given, to the endorser, of the dishonor of the note by the maker. The notary states, in his protest. a demand on the drawer, the non-payment, and that notice was given to the endorser. I think this sufficient prima facie evidence of the notice, and that it was given in a due and regular manner; and no evidence has been given to impeach it. Dickins v. Beal, 10 Pet. [35 U. S.] 580; Nicholls v. Webb, 8 Wheat. [21 U. S.] 326.

The real question between the parties is, whether, on the evidence of the two instruments of writing produced on the trial, to wit, the general assignment, made by Isidoro d'Angulo, on the 18th September. 1837, and the subsequent agreement or arrangement made, on the 21st of the same month. between the assignees and certain of the creditors of d'Angulo, including the plaintiff and defendant, the defendant is discharged from his responsibility for the payment of the note in question. The second instrument is an acceptance by the creditors who signed it, of the terms and provisions of the first. It then proceeds to add to this acceptance an agreement between the said creditors, the assignees, and the debtor; or rather, a declaration by the said creditors, by which they allow the debtor to retain the furniture and carry on his business in the manner above mentioned; but makes no change in the rights of the creditors by and under the general assignment; nor does it in any manner affect the arrangement. thereby made, for the payment of the debts of the insolvent, and the appropriation, for that pur-

pose, of his estate. It is no more than a permission or authority to the assignees to allow the insolvent to retain the goods, at the risk of the creditors who assented to it.

No principle of the law, on the subject of notes. is better settled than that, if the holder releases the maker, or gives time for payment, after the note has fallen due, he thereby discharges the endorser from his responsibility; but it is equally well settled, by the same principle of equity, that, if this release or indulgence is given with the approbation or consent of the endorser, it does not discharge him. He cannot claim a constructive release from an act to which he was himself a party. Another case is where the holder of the note did assent to the release or indulgence, but with a reservation, express or implied, of his rights against the endorser. Was there such a reservation in the case before us? The holder of the note, the present plaintiff, and the endorser, the defendant, joined in the same act of forbearance to the maker. If this had been done by the holder, without the assent of the endorser. doubtless the latter would have been discharged. On the other hand, the assent of the endorser would continue his responsibility, if it had been a simple explicit declaration of such assent. We are then to inquire whether, from the acts of these parties, the law will say that such assent has been given. The defendant alleges that the intention and effect of the whole arrangement was that all the creditors who signed the instrument of the 21st September, were to look only to the insolvent and his earnings for the payment of their debts; to come into the common fate, to take the same chance, and to have no other security. The plaintiff, on the other hand, contends that he was willing to accede to this kindness to the insolvent, to give his permission to the assignees to allow him to go on with his business, but not to surrender another and a better security he had for his debt. These contradictory allegations bring the case to the question, what was the intention of the parties? What construction will the law put upon their acts, in relation to the continuance of the responsibility of the endorser of the note, or his discharge from it?

Various cases have been cited on this question; but two of them are so very similar in their circumstances to that before us, and their principles are so satisfactory to me, that I shall confine myself to them. The first is the case of Bruen v. Marquand, 17 Johns. 58. It was a suit by the holder of a note, against the endorser. Both the endorser and the holder had signed a release of the maker. The endorser claimed to be discharged on the ground that the holder had released the maker. The plaintiff contended that, as the defendant, as well as himself, was a party to the release, and had assented to it, their rights, as between themselves, could not be affected by it, and that it was apparent from

the release itself that it was the understanding of the parties that this note was to be provided for by the endorser, the defendant. In delivering the opinion of the court, Van Ness, Justice, said, the question arises "whether or not the release and discharge of the maker is, in this case, a release of the defendant, the endorser? The general rule is not disputed; but it is argued that this case is not within it." The judge says that the reason for discharging the endorser does not apply, which is, that the remedy of the endorser against the maker is materially affected, or taken away; and this reason does not apply because the endorser, who is a party to the assignment, released the maker from liability to him. He has, therefore, released all his remedy against the maker in case he should be compelled to pay the note. The judge further remarks: "This is a question of intent on the whole instrument. There is no express release of the defendant (the endorser), and the release of the maker is a discharge of the endorser, by construction only; and if the intention of the parties was to preserve the liability of the endorser, it was competent for them to do so." After stating the circumstances of the case, the judge concludes that it appears to him there was a full understanding that the liability of the endorser should remain unimpeached. Referring to the inventory which accompanied the assignment, he says, in still stronger language, that, in his opinion, it is a plain and unequivocal recognition, by the defendant, that his liability as endorser, was not to be extinguished by the discharge of the maker. Again: the intent of the parties clearly appears to have been, that both the holder of the note and the endorser should set the maker free, but that the remedy against the endorser should remain; for the reason that, the debt was put in the first class, the maker intending to secure the endorser. The reason, arising from this preference given to the debt, is more fully enlarged upon by the learned judge. As between the holder of the note and the maker, there was no reason for this preference; but as between the maker and the endorser it was otherwise. The judge was quite satisfied that this was the true construction of the assignment, and, on this ground, the defendant was held to be liable, as endorser.

The case before us is so much stronger than that cited, as the money due on this note is not only preferred to all other debts, but it is so preferred as a debt due to the defendant, as a claim he has upon the estate. Now, if it were intended that he should be discharged from all liability to pay that note, why was it included in the list of debts for which he was to have a preference? How can we suppose the holder intended to exchange his claim upon a good responsible endorser for the uncertain resort to an insolvent's estate?

The case of Parsons v. Gloucester Bank, 10

Pick. 533, is decided on the same principle, although the intention of continuing the liability of the endorser is more explicit, being expressly declared, and not collected from the circumstances of the case and the provisions of the assignment. Whenever, however, it is satisfactorily ascertained by circumstances, the effect is the same as if it had been expressly declared. In that case, an insolvent debtor made an assignment of his property, for the payment of his debts. It was assented to and executed by the holder and endorser of one of his notes. It contained a release of the debtor, but with a declaration, or proviso, that it should not affect any collateral security taken by a creditor. The instrument of release, with this proviso or reservation, being executed by the endorser, of course had his assent; he agreed that the maker of the note should be released, and he also agreed that this release should not affect any collateral security held by any creditor of the maker of the note. The endorser had paid the money due on the note to the holder, and brought his suit to recover it back, as having been paid by mistake; but the court thought he had altogether failed to make out his ground of action.

In the case of Gloucester Bank v. Worcester, 10 Pick. 528, the maker of a note which was endorsed made a general assignment in trust to pay his debts, which was executed by the holder and endorser of the note, and contained a general release of all claims against the assignor. The endorser was sued, and claimed to be discharged on the general ground of the release of the maker. The opinion of the court is thus given: "We think that it is very clear, from the assignment or indenture itself, independently of the parol evidence, that the plaintiffs did not intend to discharge the defendant from his liability as endorser; and that the discharge, contained therein, of the maker, by the plaintiffs, was by the approbation of the defendant." The parties provided always "that nothing therein contained should be construed to impair or affect any lien or pledge theretofore created or obtained as security for a debt or claim due from (the maker) the party of the first part." The court thought that an endorsement was well described by the words "lien or pledge;" and say that the defendant, by becoming a party, agreed to the arrangement that the principal debtor should be discharged, in consideration of the property assigned by him to be distributed, and that the pledge or undertaking which he had given by his endorsement should continue. It will be observed, if it could be doubted, that the assignment by the debtor of his property to be distributed to his creditors is considered to be a sufficient consideration for the release, and the agreements made by the creditors.

The principles recognized in these cases by the courts of New York and Massachusetts, in which I concur, reduce the case now to be decided to the question, whether it appears, by deeds or instruments executed or assented to by the plaintiff and defendant, that it was or was not the intention or understanding of the parties to continue the liability of the endorser to the holder of the note, notwithstanding the release of the maker? In the cases cited, affirmative proof of this intention was drawn from the instruments themselves; that is, the courts were satisfied that such was the intention, from the provisions and agreements of the instruments of assignment and release. Without, however, looking for direct or circumstantial proof of the intention of the parties to continue the liability of the endorser, in any particular case, it seems to me that, unless the contrary appears, the assent of the endorser to the release of the maker of a note, by the holder, will of itself prevent such release from operating as a discharge of the endorser. It is a release without his assent that brings this consequence upon the holder; and, therefore, unless it appears, by direct proof or a fair construction of the acts of the parties, that the liability of the endorser was to be discharged, notwithstanding his assent to the release of the maker, his liability will continue. When the endorser assents to the release, and has himself released the maker, the reason for discharging him, as given in Bruen v. Marquand, altogether fails; that is, that his remedy against the maker is affected or taken away by the release of the holder, for he (the endorser) has himself, by his own act, abandoned or given it away.

We have, then, to inquire, from the circumstances of the transactions between Isidoro d'Angulo and his creditors, and the construction of the deeds to which they were parties, what was the intention in regard to the endorsed notes, or, more particularly, the note which is the subject of this suit? Was it intended that the holder of this note should discharge the endorser, and look only to the estate of the insolvent for the satisfaction of his debt? At first blush, it would seem to be strange that he should give up a good and substantial security, for the chance of getting his money from the earnings of d'Angulo in the hotel and business in which he had already failed.

What intention does the law infer from these deeds or instruments?—that is, the assignment of the 18th September, and the instrument of the 21st of the same month, by which the holder and endorser of this note, with some other creditors, agree that the assignees shall permit the said d'Angulo to continue in possession of his furniture, &c., he agreeing to make payments to them, in proportion to their debts, from time to time, as his receipts should warrant. It is to be observed that no release is stipulated for in the assignment, nor given by the subsequent instrument; but time is given to d'Angulo to pay this note by dividends from the profits of his business, and this indulgence is given

both by the holder and endorser of the note, and, of course, is done with the approbation and consent of both.

Without recurring to the principles already recognised to make an application of them to the circumstances of this case, it will make the intention of the parties, if possible, more clear, to remember that this note is included in the list of debts due to the defendant; that, of course, he was entitled to receive the dividends or payments to be made on it, from the earnings and business of d'Angulo; and that the plaintiff, Eldrege, had no claim whatever to any such dividend or payment which might be made for, or on account of, this note; nor is Eldrege ever named as a creditor, so fully did it seem to be the understanding that he was to look to Pablo Chacon for his money. Again, the debts for which Pablo Chacon has a priority or preference over all the other creditors of d'Angulo are described as debts due to him for money lent to d'Angulo, or for which he (Chacon) had become responsible. In the list, this note is put down as one of the responsibilities of Chacon.

I am of opinion that the assent of the endorser to this indulgence to the maker, to this endeavor to afford him an opportunity to pay the debt, has the effect to continue his liability for the payment of the note, and to take from him the discharge which such an arrangement, without his consent, would have entitled him to. Let judgment be entered for the plaintiff, according to the agreement filed.