† WHIDDEN *versus* SEELYE.

A plea in abatement, *defective* in not being verified by *affidavit,* when of facts *not* apparent of record, or for not being *seasonably* filed, or for not being *entitled* of the term when the writ was entered, may be objected to on *general* demurrer.

The *effect* of deeds and contracts made in a foreign country, without any evidence before the Court of what it may be, is presumed to be the same as if made within our own jurisdiction.

A mortgagee in possession may maintain *trover* against a stranger who cuts trees upon his premises and *takes them away.* When severed from the freehold, they become personal property, and for the *asportation* trover will lie.

Trover being a transitory action may be maintained in *this* State for a conversion of personal property in a *foreign jurisdiction.*

The instructions of the Court, upon a matter wholly immaterial to the issue, if wrong, cannot avail the party excepting.

ON EXCEPTIONS from *Nisi Prius,* RICE, J., presiding.

TROVER. The writ in this case, returnable at Sept. term of the District Court for Washington County, 1850, described the defendant as belonging to the parish of St. George, in the county of Charlotte, and Province of New Brunswick. It alleged a conversion at Calais of certain described property of the plaintiff, such as mill logs, lumber, potatoes, mill chain, mill and circular saws, mill bars, mill dogs, &c.

A plea in abatement at a term of the District Court was filed which was in these words:—

"*Rendol Whidden* v. *Stewart Seelye.* And now the said Seelye comes and defends, &c., and says that the wrongs and injuries in the plaintiff's writ and declaration mentioned, relate to the real estate situate in the county of Charlotte, in the Province of New Brunswick, and that he at the time

of suing out said writ, was, and ever since has been res-
ident in said county of Charlotte, where there are compe-
tent courts established for the trial of all causes of action
arising therein, and that the cause of action mentioned in
the plaintiff's writ (if any there be) arose in said county of
Charlotte. Wherefore he prays judgment if this Honorable
Court here will, or ought, to take cognizance of the plea
aforesaid, and for his costs.           "Stewart Seelye."

To this plea there was a general demurrer and joinder.

At the Feb. term of the District Court, 1851, HATHAWAY,
J., certified, that the defendant appeared in person and
pleaded the above plea, and in support of it presented the
affidavit of one Nichols, by whom it appeared that defendant
resided in the Province of New Brunswick, and that all the
property in controversy was, and had been in that Province,
a part of it being in a mill in St. George, and the logs and
potatoes taken from lands there situated; that he overruled
this plea and ordered the defendant to answer further.

To this order exceptions were taken and allowed.

When this action came on for trial, the defendant pleaded
the general issue, and filed a brief statement that he ought
not to be held to answer, because the subject matters of the
suit were never within this State, but belonged to the realty,
and brought in issue the title to real estate in the Province
of New Brunswick; also denying any conversion, and alleg-
ing that the hay and potatoes mentioned, grew upon land of
defendant's father, to which land plaintiff never had any title,
and if he ever had any, he had parted with it before the
potatoes were dug — that the saws, &c., were part of the
same real estate.

The property alleged to be converted was in the Province
of New Brunswick, and the evidence tended to show that
the lumber was cut upon and taken from a tract of 2800
acres, in the parish of Pennfield, and the other property
was upon the same tract.

Plaintiff introduced in evidence a location ticket of those
premises from the Crown Land Office in Fredericton, issued

in 1835, to one Henry Seelye; also a mortgage deed of warranty from said Seelye to plaintiff, of the same, together with the bond it was made to secure.

No evidence was produced as to the laws of New Brunswick.

A portion of the evidence presented by defendant, was a memorandum made and signed by the plaintiff and Henry Seelye, on Dec. 26, 1840, of the following tenor:—

"Memorandum of an agreement by, and between Rendol Whidden on the one part, and Henry Seelye on the other. Said Seelye agrees to attend to the lumbering business on the east side of Lake Utopia, at the Lake mill, on the property belonging to Rendol Whidden at any services his business may require, for the sum of fifty dollars per month, to be allowed on settlement by said Whidden. The said Seelye further agrees to furnish four horses, for thirty dollars per month, and one yoke of oxen, for twelve dollars per month, equipped with all necessary geers, such as harnesses, sleds, chains, &c., for the woods;—also to furnish ten tons of English hay, for ten dollars per ton, the horses and oxen to be under pay as long as the hauling and sledding is good. And it is further understood that the said Seelye shall have one third of the profits arising from the lumbering operations, after all the expenses are paid, said Seelye paying one third the expenses, and a reasonable rent for the property. It is further understood that said Whidden shall have all the control of all the property and lumber to dispose of, for the benefit of all concerned. It is understood that the said Seelye boards himself at his own expense."

There was evidence in the case tending to show, that at some time there had been a grant of the greater part of the land described in the location ticket, to Henry Seelye, that this grant was in the possession of defendant; and on notice during the progress of the trial, it was not produced, and parol evidence of its contents was given, against the objections of defendant.

It appeared also that plaintiff, in Sept. 1849, had conveyed his interest in these lands to the St. Stephens Bank.

Evidence was introduced tending to show, that defendant cut and took away lumber from these premises in 1845–6, also in 1849–50; and that he took possession of certain personal property on the premises which his father Henry had previously delivered plaintiff.

As to the contract between Henry Seelye and plaintiff, the defendant requested the Judge to instruct the jury that it constituted a partnership which continued until notice of a dissolution was given, or one of the parties had given evidence that it was dissolved; — that, if a grant was found to have been made of the land, they would not be authorized to find for plaintiff for any logs cut by defendant prior to the date of the grant.

The Judge declined this request, but instructed the jury that the contract was one of hire, and did not constitute a co-partnership; — that, as plaintiff claimed no ownership to the lumber or logs sued for, except by a title to the land whence the property was taken, it was incumbent on him to satisfy them he was the owner of the land.

The defendant's counsel contended, that as the liability of defendant to this action must be settled by the laws of the British Province of New Brunswick, it was incumbent on plaintiff to show, as matter of fact, that by the laws of New Brunswick he was the legal owner of the land from which the property was severed, and had the right to the possession of the property, at the time it was severed, and that the instruments offered by him as evidence of title were such in form and substance, as by the laws of New Brunswick, would pass the title to the land; — that all the legal requisites to pass the title by the laws of that Province had been complied with; — that, as there was no evidence before the Court or jury upon this subject, the fact could not be presumed to exist.

On this part of the case the instructions were: —

The plaintiff has attempted to show his title by deeds

here exhibited. A mortgage and a bond secured by it. Instruments apparently in form convey real estate, and if you are satisfied that this deed does convey the real estate in question, under the laws of New Brunswick, you will so find. The mortgage deed, is one of warranty, and it is a principle of law here, which probably exists in all countries where the common law prevails, (which is understood to be the case in New Brunswick,) that if the grantor make a conveyance by deed of warranty, without any title, and afterwards acquires one, it enures to the benefit of the grantee. Whether this is so in the Province of New Brunswick, you will determine from the evidence in the case, and whether it does not warrant such a conclusion. The plaintiff would have a right to the possession of the tract covered by the location ticket, from the time it was indorsed to him, and a right to protect the property against all strangers to the title, and all persons except those who have authority to enter upon the land by the government, and in case his title was subsequently perfected by a grant of the fee, recover for any logs which were cut by defendant on said land without authority, after the transfer to him of the location ticket, and while he was in possession as mortgagee, but not after he had parted with his title, or when he was not in possession of the land.

The jury returned a verdict for plaintiff.

The defendant excepted and also filed a motion to set aside the verdict as against the evidence and law of the case.

*J. Granger*, in support of the motion and exceptions.

1. The plea was sufficient in all matters of form, and should have been held good. Besides, a general demurrer does not reach any defects in matters of form. 2 Sup. U. S. Dig., 554, 769. Ibid, 556, pl. 824.

If a sufficient answer appears in the facts stated in the pleas, every thing else is matter of form. Story's Plead. 342.

The demurrer admits the facts stated, and they are suffi-

cient to show that the Court ought not to entertain jurisdiction of the action. In such an action, the title of real estate in a foreign country ought not to be tried. The right of property in a chattel that has become such by severance from the freehold, where the title to the land is in contest, cannot be tried in a transitory action. *Powell* v. *Smith,* 2 Watts, 127; *Baker* v. *Howell,* 6 S. & R., 509; *Miller* v. *Miller,* 7 Pick. 133; 1 Chit. Plead., 362; *Bigelow* v. *Jones,* 10 Pick. 161.

2. But if the Court had jurisdiction, the verdict is against law. The facts in controversy were to be established by the law of New Brunswick. No evidence was given of them and plaintiff did not present a *prima facia* case. Story's Conflict of Laws, § § 370, 424, 550.

3. The verdict was not authorized by the evidence. The location ticket was null and void when indorsed — it was not assignable — it passed no rights to the plaintiff. The mortgage was not shown to be made according to the form required in that Province to convey real estate.

4. The instructions given were erroneous — as to the effect of the mortgage deed, whether it conveyed the estate in question — and whether by the laws of that Province any title acquired after the mortgage, by Henry Seelye, enured to the benefit of plaintiff.

These and kindred matters were all left to the jury. And the question, whether plaintiff was in possession, was left to them, when it was not even pretended that he had any but a constructive one by his deed. That was a question of law to be proved as a fact. And then again the instruction that the instruments offered in evidence by plaintiff were *apparently* sufficient to pass title to real estate, was wrong, for there was nothing to measure this sufficiency by. Their sufficiency was matter of proof, and no proof was offered. U. S. An. Dig., 1850, Tit. Evidence, 111.

When there is no proof to establish a fact, the jury should be so instructed. 13 U. S. An. Dig. Trial, 58.

`The law of a foreign state must be proved as a fact. *Haven* v. *Foster*, 9 Pick. 112 ; 2 Stark. Ev. 568.

There was error in the instruction that it is a principle of law, probably in all countries, &c. that when the grantor in a deed of warranty of land has no title, an after acquired title enures to the benefit of his grantee. *Owen* v. *Boyle*, 15 Maine, 147. Such is not the law of England, except in case of a feoffment. 2 Smith's Leading Cases, 454, note ; *Doe, Ex dem., Oliver* v. *Powell*, 1 Ad. & Ellis, 531. Such is not the law of New Brunswick, as is decided in„*Ker* v. *Wetmore*, a case in relation to this identical land.

Whether the location ticket was in force at the time it was indorsed, was an issuable fact, but the Court assumed it, and so were all the facts connected with it.

So there was error in relation to the contract. When taken in connection with the acts of the parties and the testimony, it should have been left to the jury to say whether a partnership existed or not.

*B. Bradbury & C. R. Whidden, contra.*

APPLETON, J. — The plea in abatement is fatally defective. It is of facts not apparent of record, and should be verified by affidavit. It does not appear to have been seasonably filed. *Nickerson* v. *Nickerson*, 36 Maine, 417. Nor does it appear to be entitled of the term to which the writ was returnable. Nothing is better settled than that advantage may be taken of these defects on general demurrer.

The law of a foreign country is a fact to be proved. Certain deeds and contracts, executed in the Province of New Brunswick, were received in evidence. The rights of the parties to this suit depended upon the construction of, and the effect to be given to these deeds and contracts. Neither party saw fit to introduce any evidence as to what, under the facts proved, would be their legal effect in the place in which they were executed. But when the law of the place where they were executed, is not shown, they must receive the same construction and have the same effect as if they

were executed in the State in which the trial is had. No evidence is furnished by the parties. The *lex loci* not being shown, the Court cannot assume it variant from the *lex fori.* In *Legg* v. *Legg*, 8 Mass. 99, the Court declare that they cannot judicially take notice of the laws of another State, and that they would presume its laws similar to their own. This doctrine received the sanction of the Supreme Court of New York, in *Holmes* v. *Broughton,* 10 Wend. 75, and in *Leavenworth* v. *Brockeway*, 2 Hill, 201. In *Allen* v. *Watson*, 2 Hill, (S. C.) 319, the plaintiff sought to recover a sum of money, as belonging to him, which the defendants had won at a faro table, in Georgia. The defendants insisted, that before the plaintiff could recover, he must show playing at faro to be unlawful by the law of Georgia. The Court, however, said, "it is true the legality or the illegality of any transaction must depend on the law of the State where it transpires, but it is incumbent on those who would avail themselves of it, to show what that law is. In this State, (South Carolina,) playing at faro is unlawful and punished by fine; and if we are obliged to determine that question, in utter ignorance of what the law of Georgia is, we must resolve it by our own rule, for the obvious reason that we have no other." In *Crozier* v. *Hodge*, 3 Mill. (Lou.) 357, PORTER, J., says, "we have repeatedly decided that the laws of other States must be proved by evidence, to enable us to take judicial notice of them. When they are not so proved, we must decide the case by our own law." In *Brown* v. *Gracey*, 2 D. & R. 41, ABBOTT, C. J., said, "that if the law of Scotland differed from the law of England, as to the liability of the defendants, it was for the defendant to show it."

The Court instructed the jury that the plaintiff "could not recover for any logs that had been taken from the land after he had parted with his title, or when he was not in possession of the land." We must presume that the verdict was rendered in accordance with this instruction, and that the logs, for the value of which the verdict was rendered, were cut and carried away, and converted by the defendant

to his own use, while the plaintiff had the title and possession of the land upon which they were cut.

The case, as disclosed in the evidence and as found by the jury, is of a mortgager in possession against a trespasser upon the mortgaged premises, who has carried away the logs, the cutting of which constituted his trespass. The trees on the plaintiff's land, when severed from the freehold and carried away, became personal property, and his title thereto was not divested by the wrongful acts of the defendant. In *Nelson* v. *Burt*, 15 Mass. 204, it was held that trover would lie for cutting and carrying away corn standing and growing. "If," say the Court, "the defendant was in fact a trespasser in entering the close and cutting down the corn, the property of the corn when cut was in the plaintiff; and the taking it away was a wrong for which trover will lie." In *Mather* v. *Trinity Church*, 3 S. & R. 509, DUNCAN, J., says, "it, (trover,) does not lie for injuries to land or other real property, even by a severance from the freehold, unless there be also an *asportation ;* that if, after the severance from the freehold, as in the case of trees cut down, the property severed be taken away, or of coals dug from a pit, be afterwards thrown out, this action will lie, by the person having the right and being in the possession, against a mere intruder and trespasser."

When there has been a severance of what belongs to the freehold and an *asportation*, the action of trover may be maintained. 3 Stephen's N. P. 2665. The title to the property severed remains unchanged and the owner may regard it as personal property and maintain replevin. *Richardson* v. *York*, 14 Maine, 216. So, the tort being waived, if the property severed has been sold, the action of assumpsit may be maintained. As between mortgager and mortgagee, the property in timber cut on the mortgaged premises is in the latter, and a purchaser from the mortgager takes it subject to the paramount rights of the mortgagee. *Gore* v. *Jenness*, 19 Maine, 53. Much more then may the mortgager maintain trover against a mere intruder or wrongdoer.

The jury have found that the plaintiff was in possession of the mortgaged premises and that the defendant cut thereon the logs in controversy. The logs having been severed from the freehold, and after such severance being personal property, and having been carried away and converted by the defendant to his own use, trover is the fitting and appropriate form of action in which to recover the damages resulting from their conversion. It is a transitory action and may be maintained in this State for a conversion of personal property in a foreign jurisdiction.

The instruction of the Court, that the contract of Dec. 26, 1840, between the plaintiff and Henry Seelye, did not constitute a co-partnership, is made the subject of exception. It is immaterial whether the ruling of the Court on this point was or was not correct, inasmuch as if erroneous, it is not perceived that it could have operated injuriously to the defendant.

This suit is for logs cut on the land of the plaintiff and which the defendant is proved to have converted to his own use. He claims no rights through, and derives none under, the alleged co-partnership. The existence thereof is not a material fact, to be proved on the part of the plaintiff, to enable him to maintain, nor on the part of the defendant, to defeat, the present action.

*Exceptions and motion overruled.*
*Judgment on the verdict.*