REUBEN F. LITTLE v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

June 8, 1896.

Nos. 9825—(39).

Injury to Land in Another State—Action—Venue.

An action will lie in this state to recover damages for injuries to land situate in another state.

Same.

Such an action is purely personal in its nature, the reparation being purely personal, and for damages.

Same—G. S. 1894, §§ 5182, 5183.

The statute of this state that actions for injuries to real estate must be brought in the county where the subject of the action is situated only applies to causes of action arising within the state.

[1] Reported in 67 N. W. 846.

Action in the district court for Ramsey county.  The complaint alleged that plaintiff was the owner of certain lands in Polk county, Wisconsin, adjacent to defendant's railway, and of certain personal property thereon, and that defendant, while running its train past said land, by its negligence set a fire which damaged the land and burned the personal property.   Defendant answered on the merits, and also in the seventh paragraph of the answer alleged that the court had not jurisdiction because the legislature of Wisconsin, prior to the time at which the alleged damages arose, enacted that all actions for injury to real property should be tried within the county in which the subject of the action is situate.  · Plaintiff demurred to the seventh paragraph of the answer.   It was stipulated that for the purpose of the demurrer the action should be treated as if it were solely for the recovery of injuries to real property in Wisconsin. From an order overruling the demurrer on the ground that the complaint did not state a cause of action, (Brill, J.), plaintiff appealed. Reversed.

*Henry C. James*, for appellant.

The court had jurisdiction of the subject-matter.  Const. art. 1, § 8; art. 6, §§ 1, 5; Agin v. Heyward, 6 Minn. 53 (110); Southern Minn. R. Co. v. Stoddard, 6 Minn. 92 (150); Armendiaz v. Stillman, 54 Tex. 623; Genin v. Grier, 10 Ohio, 209; Home Ins. Co. v. Pennsylvania R. Co., 11 Hun, 182; Barney v. Burstenbinder, 7 Lans. 210. See 2 Smith, Lead. Cas. (9th Ed.) 916, 939, 970; Livingston v. Jefferson, 1 Brock. 203, Fed. Cas. No. 8,411, per Marshall, C. J.

*L. K. Luse* and *Thomas Wilson*, for respondent.

The constitutional provision is to be read in the light of the common law rules in force when it was adopted.   3 Am. & Eng. Enc. Law, 680; St. Paul & S. C. R. Co. v. Gardner, 19 Minn. 99 (132); Mead v. Walker, 17 Wis. 189; County Board of Dane v. Dunning, 20 Wis. 210; Whallon v. Bancroft, 4 Minn. 70 (109).   Prior to the adoption of the state constitution an action for injury to land located in another state could not be maintained here.   Watt's Admrs. v. Kinney, 23 Wend. 484; American U. Tel. Co. v. Middleton, 80 N. Y. 408; Cragin v. Lovell, 88 N. Y. 258; Dodge v. Colby, 108 N. Y. 445,

15 N. E. 703; Allin v. Connecticut R. L. Co., 150 Mass. 560, 23 N. E. 581; Champion v. Doughty, 18 N. J. Law, 3; Deacon v. Shreve, 23 N. J. Law, 204; Bettys v. Milwaukee & St. P. Ry. Co., 37 Wis. 323; Mathie v. McIntosh, 40 Wis. 120; Brown v. Irwin, 47 Kan. 50, 27 Pac. 184; Thayer v. Brooks, 17 Ohio, 489; Bruins v. Bruins, 55 Wis. 548, 13 N. W. 542; Eachus v. Trustees Ill. & M. Canal, 17 Ill. 534; Cooley, Torts, 471; Du Breuil v. Pennsylvania Co., 130 Ind. 137, 29 N. E. 909.

MITCHELL, J.    This action was brought to recover damages for injuries to real estate situated in Wisconsin, caused by the negligence of the defendant.    The question presented is, can the courts of this state take cognizance of actions to recover damages to real estate lying without the state; in other words, is such an action local or transitory in its nature?

The history of the progress of the English common law respecting the locality of actions will aid in determining how this question ought to be decided on principle.    Originally, all actions were local. This arose out of the constitution of the old jury, who were but witnesses to prove or disprove the allegations of the parties, and hence every case had to be tried by a jury of the vicinage, who were presumed to have personal knowledge of the parties as well as of the facts.    But, as circumstances and conditions changed, the courts modified the rule in fact, although not in form.    For that purpose they invented a fiction by which a party was permitted to allege, under a videlicet, that the place where the contract was made or the transaction occurred was in any county in England.    The courts took upon themselves to determine when this fictitious averment should and when it should not be traversable.    They would hold it not traversable for the purpose of defeating an action it was invented to sustain, but always traversable for the purpose of contesting a jurisdiction not intended to be protected by the fiction.    Those actions in which it was held not traversable came to be known as transitory, and those in which it was held traversable as local, actions.    Actions for personal torts, wherever committed, and upon contracts (including those respecting lands), wherever executed, were deemed transitory, and might be brought wherever the defendant could be found.

As respects actions for injuries to real property, we cannot discover that it was definitely settled in England to which class they belonged prior to the American Revolution.    As late as 1774, in the leading case of Mostyn v. Fabrigas, 1 Cowp. 161, 2 Smith, Lead. Cas. (9th Ed.) 916, Lord Mansfield, who did more than any other jurist to brush away those mere technicalities which had so long obstructed the course of justice, referred to two cases in which he had held that actions would lie in England for injuries to real estate situated abroad.    In that same case he said:[2]  "Can it be doubted that actions may be maintained here, not only upon contracts, which follow the persons, but for injuries done by subject to subject, especially for injuries where the whole that is prayed is a reparation in damages or satisfaction to be made by process against the person or his effects within the jurisdiction of the court?"    While all that is there said as to actions for injuries to real property is obiter, yet it clearly indicates the views of that great jurist on the subject. (And we cannot discover that it was fully settled in England that actions for injuries to lands were local until the decision of Doulson v. Matthews, 4 Term R. 503, in 1792,—16 years after the declaration of American independence.) The courts of England seem to have finally settled down upon the rule that an action is transitory where the transaction on which it is founded might have taken place anywhere; but is local when the transaction is necessarily local,—that is, could only have happened in a particular place.    As an injury to land can only be committed where the land lies, it followed that, according to this test, actions for such injuries were held to be local. As the distinction between local and transitory venues was abolished by the judicature act of 1873,[3] we infer that actions for injuries to lands lying abroad may now be maintained in England.

It is somewhat surprising that the American courts have generally given more weight to the English decisions on the subject rendered after the Revolution than to those rendered before, and hence have almost universally held that actions for injuries to lands are local.    In the leading case of Livingston v. Jefferson, 1 Brock. 203, Fed. Cas. No. 8,411, which has done more than any other to mold

[2] At page 179, (Smith) page 936.

[3] See 36 & 37 Vict. c. 66, Rules of Procedure, 28.

the law on the subject in this country, Chief Justice Marshall argued against the rule, showing that it was merely technical, founded on no sound principle, and often defeated justice; but concluded that it was so thoroughly established by authority that he was not at liberty to disregard it.    But so unsatisfactory and unreasonable is the rule that since that time it has, in a number of states, been changed by statute, and in others the courts have frequently evaded it by metaphysical distinctions in order to prevent a miscarriage of justice.    Chief Justice Marshall's own state of Virginia changed the rule by statute as early as 1819.    Some courts have made a subtle distinction between faults of omission and of commission.    Thus in Titus v. Inhabitants of Frankfort, 15 Me. 89, which was an action against a town for damages sustained by reason of defects in a highway, it was held that, while highways must be local, the neglect of the defendant to do its duty, being a mere nonfeasance, was transitory.    It has also been held that where trespass upon land is followed by the asportation of timber severed from the land, if the plaintiff waives the original trespass, and sues simply for the conversion of the property so carried away, the action would become transitory.    American U. Tel. Co. v. Middleton, 80 N. Y. 408;  Whidden v. Seelye, 40 Me. 247.    Again, it has been sometimes held that an action for injuries to real estate is transitory where the gravamen of the action is negligence,—as for negligently setting fire to the plaintiff's premises.    Home Ins. Co. v. Pennsylvania R. Co., 11 Hun, 182; Barney v. Burstenbinder, 7 Lans. 210.    In Ohio the rule has been repudiated, at least as to causes of action arising within the state, as being wholly unsuited to their condition, because under their judicial system it would result in many cases in a total denial of justice.    Genin v. Grier, 10 Ohio, 209.

Almost every court or judge who has ever discussed the question has criticised or condemned the rule as technical, wrong on principle, and often resulting in a total denial of justice, and yet has considered himself bound to adhere to it under the doctrine of stare decisis.

An action for damages for injuries to real property is on principle just as transitory in its nature as one on contract or for a tort committed on the person or personal property.    The reparation is purely personal, and for damages.    Such an action is purely personal, and in no sense real.    Every argument founded on practical considera-

tions against entertaining jurisdiction of actions for injuries to lands lying in another state could be urged as to actions on contracts executed, or for personal torts committed, out of the state, at least where the subject-matter of the transaction is not within the state. Take, for example, personal actions on contracts respecting lands which are conceded to be transitory. An investigation of title of boundaries, etc., may be desirable, and often would be essential to the determination of the case, yet such considerations have never been held to render the actions local. Another serious objection to the rule is that under it a party may have a clear, legal right without a remedy where the wrongdoer cannot be found, and has no property within the state where the land is situated. As suggested by plaintiff's counsel, if the rule be adhered to, all that the one who commits an injury to land, whether negligently or willfully, has to do in order to escape liability, is to depart from the state where the tort was committed, and refrain from returning. In such case the owner of the land is absolutely remediless.

We recognize the respect due to judicial precedents, and the authority of the doctrine of stare decisis; but, inasmuch as this rule is in no sense a rule of property, and as it is purely technical, wrong in principle, and in practice often results in a total denial of justice, and has been so generally criticised by eminent jurists, we do not feel bound to adhere to it, notwithstanding the great array of judicial decisions in its favor. If the courts of England, generations ago, were at liberty to invent a fiction in order to change the ancient rule that all actions were local, and then fix their own limitations to the application of the fiction, we cannot see why the courts of the present day should deem themselves slavishly bound by those limitations.

It is suggested that the statutes of this state, in conformity to the old rule, make actions for injuries to real property local. G. S. 1894, §§ 5182, 5183. This is true, and, strangely enough, in 1885 the legislature went so far as to provide that, if the county designated in the complaint is not the proper one, the court should have no jurisdiction of the action. But this statute has no application to causes of action arising out of the state. While it settles the rule and indicates the policy of this state as to actions for injuries to real property within the state, we do not think it ought to have any weight

in determining what the rule should be as to causes of action arising out of the state, which can have no local venue here under the provisions of the statute. It does not appear whether the plaintiff lives in this state or in Wisconsin, but this is immaterial, for the place of his residence cannot affect the nature of the action. It is also true that in this particular case jurisdiction of the defendant could be obtained in Wisconsin, but this fact is likewise immaterial, and for the same reason.

Order reversed.

BUCK, J. I dissent. The doctrine laid down in the foregoing opinion is conceded to be against the great weight of judicial authority, and, according to my view, is unsound in principle, and contrary to a wise public policy. The plaintiff is a citizen of the state of Wisconsin, and the defendant a railroad corporation organized under the laws of that state with its line constructed therein and extending into this state. The action is brought in Minnesota to recover for damages done by the defendant to plaintiff's real estate situate in the state of Wisconsin. In my opinion, the action is one clearly local in its nature, and not transitory, and the courts of this state have no jurisdiction over the subject-matter.

In Cooley on Torts (page 471) it is said that:

"The distinction between transitory and local actions is this: If the cause of action is one that might have arisen anywhere, then it is transitory; but if it could only have arisen in one place, then it is local. Therefore, while an action of trespass to the person or for the conversion of goods is transitory, action for flowing lands is local, because they can be flooded only where they are. For the most part, the actions which are local are those brought for the recovery of real estate, or for injuries thereto or to easements. [Here the injury alleged consisted in burning the grass, roots, vegetable mold, and other material forming part of the plaintiff's land.] * * * That actions for trespasses on lands in a foreign country cannot be sustained is the settled law in England and in this country."

I am not able to state whether it has been changed by statutory enactment, and the majority opinion merely infers that it has been so changed. Blackstone, whose Commentaries were written and delivered in the form of lectures before the students of Oxford University in 1758, says,[4] that: "All over the world actions transitory

---

[4] Volume 3, page 384.

follow the person of the defendant, while territorial suits must be discussed in the territorial tribunal. I may sue a Frenchman here for a debt contracted abroad; but lands lying in France must be sued for there, and English lands must be sued for in the kingdom of England."

The case of Mostyn v. Fabrigas, 1 Cowp. 161, decided in 1774, is referred to as a leading case, yet the question here involved was not before the court in that case. There the plaintiff, Fabrigas, brought an action against Mostyn for assault and false imprisonment committed on the Island of Minorca, and it was held that the court had jurisdiction of the subject-matter. This was a transitory action, within the rules of all the courts. That a jurist as great as Lord Mansfield should inject into his opinion in that case a remark that was entirely without any relevancy to the question under consideration, adds but little force to its weight. And its force is still further lessened by the fact that ever since that decision the law of England has been settled by other eminent jurists as otherwise, and contrary to the majority opinion in this case. It seems to me misleading to call the case of Mostyn v. Fabrigas a leading one, and cite it as such upon an important legal question, when the point here involved was not there in issue. While the great weight of authority is manifestly against the doctrine laid down by the majority opinion, it may be well to refer to some of them more in detail.

In the case of Allin v. Connecticut R. L. Co., 150 Mass. 560, 23 N. E. 581, it was held that an action of tort for breaking and entering the plaintiff's close, situated in another state, could not be brought in the commonwealth of Massachusetts; and the court, in commenting upon the statute of that state which required actions for trespass quare clausum to be brought in the county where the land lies, said: "There seems to be no reason for holding that the statute renders an action for trespass to lands outside the state transitory which does not apply to an action for trespass to lands within the state." The statute has been in existence nearly 100 years, and we have not been referred to any authority or dictum to sustain the position of the plaintiff. On the contrary, the action of trespass quare clausum has always been treated as a local action. In the case of Niles v. Howe, 57 Vt. 388, it was held that trespass on the freehold would not

lie in that state for a trespass committed on lands situated in the state of Massachusetts.

In Du Breuil v. Pennsylvania Co., 130 Ind. 137, 29 N. E. 909, the court say an action cannot be maintained in this state for an injury to land lying in another state, caused by a railway company having a line of railroad running through this and such other state. That court also applied the same doctrine to an action for injury to land caused by fire escaping from locomotives in the case of Indiana, B. & W. Ry. Co. v. Foster, 107 Ind. 430, 8 N. E. 264. In the first Indiana case above cited Chief Justice Elliott says: [5] "The case before us is one in which the land lies within the territory of another sovereignty, and there can be no doubt upon principle or authority that our courts have no jurisdiction." In Eachus v. Trustees, 17 Ill. 534, it was held that the courts of Illinois had no jurisdiction in an action to recover for injuries to land situate in Lake county, in the state of Indiana. In Bettys v. Milwaukee & St. P. Ry. Co., 37 Wis. 323, it was held that an action for injury to realty situated in Iowa could not be maintained in the courts of the state of Wisconsin. Chief Justice Ryan, delivering the opinion of the court, said that it was plainly a local action under all of the authorities, which could not be maintained in the state of Wisconsin; and he cited Co. Litt. 282a; Bac. Abr. "Action" A (p. 79); Comyn, Dig. "Action" N, 4, 5 (p. 251); Doulson v. Matthews, 4 Term R. 503.

In the state of New York the doctrine is well settled by numerous decisions of its highest court that suits cannot be there maintained for injuries to lands situated in other states. See American U. Tel. Co. v. Middleton, 80 N. Y. 408; Cragin v. Lovell, 88 N. Y. 258; Sentenis v. Ladew, 140 N. Y. 463, 35 N. E. 650; Dodge v. Colby, 108 N. Y. 445, 15 N. E. 703. In the last case Chief Justice Ruger, in delivering the opinion, says: [6]

"The doctrine that the courts of this state have no jurisdiction of actions for trespass upon lands situated in other states is too well settled to admit of discussion or dispute. * * * The claim urged by the plaintiff, that, if not permitted to maintain this action, he is without remedy for a most serious injury, is quite groundless, and affords no reason for the assumption of a jurisdiction by this court which it does not possess. The plaintiff would seem to have the same

[5] At page 138.                    [6] At page 451.

remedy for the trespasses alleged that all other parties have for similar injuries. His lands cannot be intruded upon without the presence in the state of the wrongdoer, and no reason is suggested why he could not seek his remedy against the actual wrongdoers in the courts having jurisdiction. His remedy is ample, and it is no excuse for assuming a jurisdiction which we do not have that the plaintiff desires a remedy against a particular person, rather than one against the real perpetrators of the injury, who were exposed to prosecution in the place where the wrong was committed."

This language would apply to the plaintiff in this case. The defendant is a resident of the state of Wisconsin, subject to its laws, and service of summons can there be readily and easily made upon it. The gravamen of the complaint is injury to the freehold, and the records of title to that freehold, whether in or out of the plaintiff, are accessible without trouble, and witnesses, doubtless, are obtainable without extra expense. The plaintiff is not without redress otherwise than in the courts of Minnesota. In fact it is not claimed that the courts of Wisconsin have no jurisdiction to try this action, and it is plain that they have such jurisdiction.

As a matter of policy, citizens of other states should not be permitted the use of our courts to redress wrongs and injuries to real property committed within their own territory. That is not what our courts were created or organized for. Nonresidents should not be invited to bring to our courts litigation arising over injuries to real property outside of our territorial limits. Certainly there is nothing in our constitution or laws which justifies them in imposing the burden of maintaining courts at our expense for their use and benefit. Protection of our own citizens is the primary object and duty of our own courts, and it is, to say the least, a very generous and liberal interpretation of the law which accords to suitors residing in other states the right to litigate in our courts questions of injury to real estate there situate, while the courts of those states reject the claim of our own citizens to litigate there injury to real estate situate here; notably the adjoining state of Wisconsin, which adjoins our state, and where the subject-matter of this litigation is situated. It is clearly against our interests that those living in the state of Wisconsin near the division line should be encouraged in this class of litigation because our laws may be more favorable as to the rules of evidence, or for any other cause, and thus necessitate

taxation of our people that nonresidents may have a forum to litigate that which ought to be and is a local action in the state of Wisconsin.    Our citizens have no such right in the courts of Wisconsin.    Comity should be reciprocal, and this can be more properly obtained by legislative enactments of the respective states than by an interpretation in direct conflict with the almost universal judicial decisions elsewhere.    But I should seriously doubt the wisdom of any such enactment.    It might, perhaps, prevent the miscarriage of justice in some cases, but it would aid such miscarriage in many instances.

The defendant, like many other railroad corporations, extends its line from other states to this, and owns a vast amount of lands here. It may allege that citizens of our state are committing injuries to its real property here, and if such a person owns land in Wisconsin, or shall be found there, it could, under such a law, commence a suit in the courts of Wisconsin, and thus put our citizens to the trouble and expense of going to that state for trial of a case which in all fairness should be tried here.    Railroad companies thus situated have great facilities for transporting their witnesses over their own lines without expense to themselves, while a poor man, charged, perhaps unjustly, with a trespass, must travel hundreds of miles into another state to meet his accusers, or suffer judgment by default. The majority opinion means defeat for the railroad company in this case, but it would mean victory for them hereafter if an alleged trespasser upon their lands in Minnesota is caught in Wisconsin and made to answer in its courts, if such a law should prevail there. Now citizens of Wisconsin will have an unjust advantage over citizens of Minnesota.    Again, suppose the courts of California should adopt the doctrine of the majority opinion, and one of our citizens should visit that state for pleasure, health, or business, and is there sued by some one claiming that lands belonging to him situate here have been damaged by such citizen of Minnesota, would it not seem a miscarriage of justice that the trial in such case must take place thousands of miles away from the man's home, and from the situs of the property alleged to have been injured?    The hardship of such a proceeding would seem to be intolerable, and I cannot give my assent to any such doctrine, whatever may be the rule as to the trial of actions upon voluntary contracts between parties; and I prefer that

the rule should be that for injuries to real property the jurisdiction of our courts should only be co-extensive with its territorial sovereignty.

This doctrine, which is so strongly imbedded in the common law and judicial authorities of the country, is further adhered to by our own statute, which provides that actions for injuries to real property shall be brought in the county where the subject of the action is situated, and prohibits the court from having jurisdiction if brought in any other county. G. S. 1894, § 5183. Thus we have a legislative recognition of the doctrine that actions for injuries to real estate are local. If there is any implication arising from legislative enactments as to the jurisdiction of courts to try actions for injury to real estate elsewhere, it would be against the contention of the plaintiff. The statute makes no distinction between trespass to lands within and without the state. It does not make the action for trespass to lands outside the state transitory. There is no warrant in the language of the constitution or statute which justifies the majority opinion, and, if sound, it must rest upon some other foundation than is to be found in the letter of the law. It is a rule which is more favorable to the plaintiff than the defendant. The former can select his own forum; the latter is helpless. No change of venue can be granted, because none is authorized.

In criminal cases the doctrine of local venue applies. One of the specifications of complaint in the immortal Declaration of Independence against Great Britain was, "For transporting us beyond seas to be tried for pretended offenses." Our constitution (article 1, § 6) provides that: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law." No one pretends but that this is a sound and reasonable principle of law, and I have never known of its being assailed as tending to a miscarriage of justice. This constitutional guaranty applies to petty offenses wherever a small fine might be imposed, and yet where, perhaps, all the property which a man owns might be at stake, he can, if found in another state, perhaps thousands of miles away from home and witnesses and the location of the alleged injured property, be tried civilly in a foreign sovereignty. Why could

he not also in a civil action be tried in China, Russia, England, Spain, Cuba, or Mexico, if found there, and there served with process, if the doctrine of the majority opinion is to prevail?    In the case of Niles v. Howe, 57 Vt. 388, the court say: "It would hardly be claimed that our courts had jurisdiction over a crime committed in another state.    And yet the same reasoning that supports the doctrine of local venue applies equally to crimes and real actions."

I think that the order should be affirmed.