REASOR-HILL CORPORATION *v.* HARRISON, JUDGE.

4-9643                                          249 S. W. 2d 994

Opinion delivered January 21, 1952.

*Talley & Owen,* for petitioner.

*Holland & Taylor* and *Marcus Evrard,* for respondent.

GEORGE ROSE SMITH, J. Petitioner asks us to prohibit the circuit court of Mississippi County from taking jurisdiction of a cross-complaint filed by D. M. Barton. In the court below the petitioner moved to dismiss the

cross-complaint for the reason that it stated a cause of action for injury to real property in the State of Missouri. When the motion to dismiss was overruled the present application for prohibition was filed in this court.

The suit below was brought by the Planters Flying Service to collect an account for having sprayed insecticide upon Barton's cotton crop in Missouri. In his answer Barton charged that the flying service had damaged his growing crop by using an adulterated insecticide, and by cross-complaint he sought damages from the petitioner for its negligence in putting on the market a chemical unsuited to spraying cotton. The petitioner is an Arkansas corporation engaged in manufacturing insecticides and is not authorized to do business in Missouri.

The question presented is one of first impression: May the Arkansas courts entertain a suit for injuries to real property situated in another State? For the respondent it is rightly pointed out that if the suit is not maintainable Barton has no remedy whatever. The petitioner cannot be served with summons in Missouri; so unless it is subject to suit in Arkansas it can escape liability entirely by staying out of Missouri until the statute of limitations has run. See Leflar, Arkansas Law of Conflict of Laws, § 4. The petitioner answers this argument by showing that with the exception of the Supreme Court of Minnesota every American court that has passed upon the question (and there have been about twenty) has held that jurisdiction does not exist.

We agree that the weight of authority is almost unanimously against the respondent, although in some States the rule has been changed by statute and in others it has been criticized by the courts and restricted as narrowly as possible. But before mechanically following the majority view we think it worthwhile to examine the origin of the rule and the reasons for its existence.

The distinction between local and transitory actions was recognized at the beginning of the fourteenth century

in the common law of England. Before then all actions had to be brought where the cause of action arose, because the members of the jury were required to be neighbors who would know something of the litigants and of the dispute as well. But when cases were presented that involved separate incidents occurring in different communities the reason for localizing the action disappeared, for it was then impossible to obtain a jury who knew all the facts. Consequently the courts developed the distinction between a case that might have arisen anywhere, which was held to be transitory, and one that involved a particular piece of land, which was held to be local. Within a short time this distinction was embodied in English statutes. Holdsworth's History of English Law, vol. 5, pp. 117-118.

As between judicial districts under the same sovereign the rule has many advantages and has been followed in America. As between counties our statutes in Arkansas require that actions for injury to real estate be brought where the land lies. Ark. Stats. 1947, § 27-601. But we permit the defendant to be served anywhere in the State, § 27-618; so the plaintiff is not denied a remedy even though the defendant is a resident of another county.

The English courts, in developing the law of local and transitory actions, applied it also to suits for injuries to real property lying outside England. If, for example, there had been a trespass upon land in France, the courts would not permit the plaintiff to bring suit in England, even though the defendant lived in England and could not be subjected to liability in France. The American courts, treating the separate States as independent sovereigns, have followed the English decisions.

In the United States the leading case is unquestionably *Livingston* v. *Jefferson,* 1 Brock 203, Fed. Cas. No. 8411. That suit was a part of the famous litigation between Edward Livingston and Thomas Jefferson; see Beveridge's Life of John Marshall, vol. 4, pp. 100-116. The case was heard by Marshall as circuit justice and Tyler as district judge. Both agreed that the suit, which was for a wrongful entry upon land in Louisiana, could

not be maintained in Virginia. In Marshall's concurring opinion he examined the English precedents and concluded that the law was so firmly established that the court was bound to follow it, though Marshall expressed his dissatisfaction with a rule which produced "the inconvenience of a clear right without a remedy."

Since then the American courts have relied almost uniformly upon the *Livingston* case in applying the rule to interstate litigation in this country. At least three reasons have been offered to justify the rule, but it is easy to show that each reason is more applicable to international controversies than to interstate disputes.

First, the ground most frequently relied upon is that the courts are not in a position to pass upon the title to land outside the jurisdiction. As between nations this reasoning may be sound. The members of this court have neither the training nor the facilities to investigate questions involving the ownership of land in France, in Russia, or in China. But the same difficulties do not exist with respect to land in another State. In our library we have the statutes and decisions of every other State, and it seldom takes more than a few hours to find the answer to a particular question. Furthermore, the American courts do not hesitate to pass upon an out-of-state title when the issue arises in a transitory action. If, for example, Barton had charged that this petitioner converted a mature crop in Missouri and carried it to Arkansas, our courts would decide the case even though it became necessary to pass upon conflicting claims of title to the land in Missouri. Again, a suit for damages for nonperformance of a contract to purchase land is transitory and may be maintained in another State, even though the sole issue is the validity of the seller's title. To put an extreme example, suppose that two companion suits, one local and one transitory, were presented to the same court together. In those States where the courts disclaim the ability to pass upon questions of title in local actions it might be necessary for the court to dismiss the local action for that reason and yet to decide the identical question in the allied transitory case.

Second, it has been argued that since the tort must take place where the land is situated the plaintiff should pursue his remedy before the defendant leaves the jurisdiction. This argument, too, has merit when nations are concerned. A sovereign, by its control of passports and ports of entry, may detain those who wish to cross its borders. But the citizens of the various States have a constitutional right to pass freely from one jurisdiction to another. *Crandall* v. *Nevada*, 6 Wall. 35, 18 L. Ed. 744. In the case at bar the poison was spread by airplane, and Barton could hardly be expected to discover the damage and file an attachment suit before the pilot returned to his landing field in Arkansas.

Third, there is an understandable reluctance to subject one's own citizens to suits by aliens, especially if the other jurisdiction would provide no redress if the situation were reversed. This was the main basis for the dissenting opinion in the Minnesota case. to which we have alluded, *Little* v. *Chicago, St. P., M. & O. Ry. Co.*, 65 Minn. 48, 67 N. W. 846, 33 L. R. A. 423, 60 Am. St. Rep. 421. One may have some sympathy for this position in international disputes, but it has no persuasive effect when the States are involved. We do not feel compelled to provide a sanctuary in Arkansas for those who have willfully and wrongfully destroyed property, torn down houses, uprooted crops, polluted streams, and inflicted other injuries upon innocent landowners in our sister States. Yet every jurisdiction which follows the rule of the *Livingston* case affords that refuge to any person—whether one of its citizens or not—who is successful in fleeing from the scene of such misdeeds.

The truth is that the majority rule has no basis in logic or equity and rests solely upon English cases that were decided before America was discovered and in circumstances that are not even comparable to those existing in our Union. Basic principles of justice demand that wrongs should not go unredressed. Our own Bill of Rights puts the matter well enough: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property, or

character." Ark. Const., Art. 2, § 13. If Barton has been wronged he should have a remedy; to deny it is to encourage skepticism as to the ability of the courts to do their duty. Under the majority rule we should have to tell Barton that he would have been much better off had the petitioner stolen his cotton outright instead of merely damaging it. And the only reason we could give for this unfortunate situation would be that English juries in the thirteenth century were expected to have personal knowledge of the disputes presented to them. We prefer to afford this litigant his day in court.

Writ denied.

The Chief Justice concurs in the result reached.

ED. F. McFADDIN, Justice (Dissenting). The definite question to be considered is clearly stated in the majority opinion in these words: "May the Arkansas Courts entertain a suit[1] for injuries to real property situated in another State?" The majority answers the question in the affirmative; and I answer it in the negative.

Insofar as Barton's defense against the Planters Flying Service is concerned, the Arkansas Court has jurisdiction.[2] The difficulty arises on Barton's cross complaint against Reasor-Hill. In that so-called cross complaint, Barton claimed that Reasor-Hill sold to the Planters Flying Service—not to Barton, I stress,—an insecticide that damaged Barton's cotton crop growing on his lands in Missouri. This complaint of Barton against Reasor-Hill was an entirely new cause of action and was a claim by Barton against Reasor-Hill for damages to a crop growing on lands in Missouri.

In *Western Union Tel. Co.* v. *Bush,* 191 Ark. 1085, 89 S. W. 2d 723, 103 A. L. R. 367, we held that damage to a growing crop was a damage to real property, and that an action to recover such damage MUST be brought in

---

[1] This means an action at law for damages, rather than "a suit".

[2] The Planters Flying Service brought action against Barton to collect the account for spraying his cotton crop. Barton defended against the action by claiming that the insecticide was not as represented. The Arkansas Court had jurisdiction of this action because it was an action on account and was transitory.

the County in which the land is situated.[3] That case clearly holds two points: (1) Damage to growing crops is damage to realty; and (2) an action for damage to realty MUST be brought in the County in which the land is situated. In the present case, the majority concedes the first point, but refuses to follow the second point; and it is in regard to this second point that this dissent is directed.

The majority in the present case candidly admits that every American Jurisdiction—save only the State of Minnesota—has followed the holding in the original case of *Livingston* v. *Jefferson* (1811) 1 Brock. 203, Fed. Cas. No. 8, 411; yet the majority, in seeing fit to depart from such time honored holding, advances three reasons, which do not seem to me to be sufficient for such a radical departure.

In the first place, the majority says that we have ample facilities to determine the land laws of other States in the United States. Here is the wording of the majority opinion: "In our library, we have the statutes and decisions of every other State, and it seldom takes more than a few hours to find the answer to a particular question." This statement about the size of the law library seems rather weak, because land actions are tried in lower courts and not in the Supreme Court library. Just because we have a fine law library does not mean that we are prepared to determine the title to lands in Texas,[4] Missouri, Vermont, or any other State. But if we have the jurisdiction which the majority claims, then we could determine ejectment actions involving ownership of lands in other States. We might undertake to do this, but the Full Faith and Credit clause of the U. S. Constitution would not require the Sister State to recognize our judgment. See *Huntington* v. *Attrill* (1892), 146 U. S. 657, 36 L. Ed. 1123, 13 Sup. Ct. Rep. 224. The example posed by the majority—as to two companion suits, one local and the other transitory—merely emphasizes that the majority

---

[3] The scholarly opinion of Mr. Justice BAKER in that case is worthy of study.

[4] The writer knows by experience that only one skilled in Texas Land Law can successfully handle an action of Trespass to try title in the State of Texas.

still recognizes that there are *LOCAL* actions; and our Court held, in *Western Union Tel. Co.* v. *Bush (supra)*, that local actions must be brought in the county in which the land is situated. Such is the clear wording of our statute (§ 27-601 Ark. Stats.) which localizes an action "For an injury to real property".

Secondly, the majority says that the rule, requiring that an action be brought in the jurisdiction in which the land is situated, is a good rule between Nations, but is not good as between States in the American Union. For answer to this, I say: I have always understood that each of the American States is Sovereign; that the Federal Government is a government of delegated powers; and that all powers not delegated to the Federal Government are retained by the States and the People.[5] Surely the majority is not attempting to reduce our American States to the level of mere local administrative units. Yet such, unfortunately, is the natural conclusion to which the majority opinion would carry us, when it concedes one rule for Nations and another for States.

Thirdly, the majority says that it does not desire to afford Arkansas Citizens a sanctuary from damage actions by citizens of other States. This is an argument that should be made—if at all—in the Legislative branch of Government, rather than in a judicial opinion. It is for the Legislative Department to determine when and where actions may be prosecuted. The opinion of the majority in the case at bar is therefore judicial legislation, minus only the enacting clause required of legislative determinations.

And having briefly noticed the three arguments advanced by the majority for the departure from the holding of the vast array of sister jurisdictions, I desire now to call attention to the Annotation in 42 A. L. R. 196, entitled "Jurisdiction of action at law for damages for tort concerning real property in another state or country".[6] That

[5] See Amendment No. 10 to United States Constitution.

[6] For study, in addition to cases in the above Annotation, see Leflar on Conflict of Laws, Sec. 4, and Sec. 82. See also American Law Institute's Restatement of Conflict of Laws, § 614, *et seq.*

Annotation lists the many, many cases that have considered the question here involved; and each Court—with the sole exception of Minnesota—has seen fit to follow the great weight of authority which has come down to us from the common law. In matters affecting real property particularly, we should leave undisturbed the ancient landmarks.[7] The rationale of the various holdings is stated in this language in the said Annotation:

"Generally speaking, actions for injuries to personal property or personal right may be brought wherever the defendant may be found and served, but at common law the courts of one state or country are without jurisdiction in actions that are local in their nature, and relate to subjects within another state or country. 7 R. C. L. 1058, 1059, Secs. 96, 97. Therefore, in the absence of a statute specifically limiting or enlarging jurisdiction of local courts, the principal question in every case involving matters occurring in another jurisdiction is whether the action is local or transitory in its nature. According to the generally accepted view, if the principal fact carries with it the idea of some certain place,—for example, relates to land,—it is local, as the distinction between local and transitory actions exists in the nature of the subject injured, and not in the means used or the place where the injury took place."

Because of the views herein stated, I respectfully dissent from the majority in the case at bar; and I am authorized to state that Mr. Justice WARD concurs in this dissent.

---

[7] Proverbs 22:28, "Remove not the ancient landmark, which thy fathers have set."