KENTUCKY COAL LANDS CO. v. MINERAL DEVELOPMENT CO. (two cases).

(Circuit Court, E. D. Kentucky. September 25, 1911.)

Nos. 699, 700.

1. COURTS (§ 269*)—JURISDICTION OF FEDERAL COURTS—CONSTRUCTION OF STATUTE.

Section 8 of the federal judiciary act (Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513]), providing for bringing in nonresident defendants in actions of a local character, has nothing to do with the right to bring suits in a Circuit Court, but has to do only with making it so that suits to enforce certain kinds of causes of action rightfully brought there may be prosecuted to a hearing and determination.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

2. COURTS (§ 269*)—JURISDICTION OF FEDERAL COURTS—VENUE OF LOCAL ACTIONS.

The provision of section 1 of the federal judiciary act (Act March 3, 1875, c. 137, 18 Stat. 470, as amended by Act March 3, 1887, c. 373, § 1, 24 Stat. 552. and Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]) that the Circuit Courts shall have original cognizance "of all suits of a civil nature" involving the requisite amount, "in which there shall be a controversy between citizens of different states," confers on those courts essential jurisdiction of all such suits, whether transitory or local in their nature, leaving only the question of venue to be determined. The provision of the following venue clause that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different states suit shall be brought only in the district of the residence either of the plaintiff or the defendant," cannot apply to a local action, such as ejectment, which can only be brought in the district where the property affected is situated, but in such case the venue is fixed by the nature of the cause of action, and, if the parties are citizens of different states and the defendant can

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be served within the district, the court has jurisdiction, although neither party is a resident of the district.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*

Jurisdiction of federal courts as affected by possession of subject-matter, see note to Adams v. Mercantile Trust Co., 15 C. C. A. 6.]

3. COURTS (§ 269*)—FEDERAL COURTS—NATURE OF ACTION—TRESPASS FOR INJURY TO REAL PROPERTY.

An action of trespass to recover damages for injury to land by cutting timber therefrom, and removing the same, is of a local nature, and can only be maintained in a federal court in the district in which the land is situated.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

At Law. Actions by the Kentucky Coal Lands Company against the Mineral Development Company (two cases). On motions, to remand to state court. Motions overruled.

R. D. Silliman, Choate & Larocque, Jos. C. Jones, and T. L. Edelen, for plaintiff.

D. D. Fields & Son, Dishman & Dishman, and Worthington & Cochran, for defendant.

COCHRAN, District Judge. These two causes are before me on motions to remand. They are both civil suits at law, and the parties to each are the same. They were originally brought in the Letcher circuit court, and have been removed here from thence. One is in ejectment to recover possession of two tracts of land in Letcher county and $2,000 damages for the wrongful detention of same. The other is in trespass, and is to recover $15,000 damages for wrongfully entering on those tracts and cutting down timber growing thereon, removing it therefrom, and converting it to the defendant's own use. The plaintiff is a New York corporation, and the defendant a Virginia corporation, doing business in this state. The latter has an agent in the state appointed under the laws thereof to receive service of process. At the time of the filing of the petition and bond for removal service of process on such agent had been duly had in both suits.

The ground of the motion to remand is that this court is without jurisdiction to hear and determine the suits; i. e., that they were not removable causes. And this position is based upon the subordinate one that they could not have been originally brought in this court. That a civil suit is not removable from a state court to a Circuit Court of the United States, unless it could in the first instance have been brought in the latter, is well settled. Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264. The removability of the suits in hand depends, then, on the question whether they could have been originally brought here. That is the sole question which is now up for consideration and determination.

Counsel for plaintiff practically assume that this question hangs on the question, subordinate thereto, whether the suits are covered by section 8 of the jurisdictional act of March 3, 1875. They will not

have it that it is possible for such jurisdiction to exist by virtue of the jurisdictional act of 1887-88, the main act conferring jurisdiction on the Circuit Courts of the United States. It is thought that that statutory provision is removed from consideration by the fact that it is expressly provided therein that where the jurisdiction is founded only on the fact that the action is between citizens of different states, as is the case here, suit shall be brought only in the district of the residence of either the plaintiff or defendant. This is not the district of the residence of either plaintiff or defendant; the one being a New York corporation and the other a Virginia corporation. That it is not the district of the residence of the defendant, even though it does business therein and has an agent on whom process can be served, has been decided by the Supreme Court in the case of Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768.

As to section 8 of the earlier jurisdictional act, to which the later one purports to be an amendment, their claim is that these suits are not covered thereby. The suits which it covers are suits "to enforce any legal or equitable lien upon or claim to or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where they are brought." The only possible ground upon which it can be claimed that this statutory provision covers suits, such as these in hand are, is that they are brought to enforce a legal claim to real property within this district. It is urged that it is not possible to claim that the suit to recover damages for the cutting down and removal of the timber or so much of the other suit as seeks to recover damages for the wrongful detention of the real property whose possession is sought to be recovered are brought for any such purpose, and hence come within that provision. As to so much thereof as seeks to recover such possession, it is claimed that, in so far, the suit is in personam, just as much so as it is, in so far as it seeks to recover damages for the wrongful detention, and that provision covers no suit in personam, but is limited to suits that are in rem or quasi in rem. Indeed, it is urged that the section, inasmuch as it provides for bringing the defendant before the court by substituted service of process outside of the district, and, if not to be had, by publication, could not constitutionally have been made to cover any suit in personam, not even one in ejectment. In support of the position that section 8 does not cover a suit in ejectment, the decision of the Court of Appeals of the District of Columbia in the case of Staffan. v. Zeust, 10 App. D. C. 260, that a substantially similar statute, applicable to the District of Columbia alone, providing for substituted service of process and publication. did not cover a suit in ejectment is much relied on. The recent decisions of the Supreme Court in the case of Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 Sup. Ct. 81, 54 L. Ed. 1069, and Wetmore v. Tennessee Copper Co., 218 U. S. 369, 31 Sup. Ct. 84, 54 L. Ed. 1073, are relied on generally as upholding the position that these suits could not originally have been brought in this court. It is conceded that Judge Phillips in the case of Spencer v. Kansas City Stockyards Co. (C. C.) 56 Fed. 745, and

that Judge McDowell, in the case of Elk Garden Co. v. T. W. Thayer Co. (C. C.) 179 Fed. 556, each have held that a suit in ejectment can be brought in the Circuit Court of the United States for the district within which the land lies, even though such district is not the residence of either plaintiff or defendant. But it is contended that the principal point upon which reliance is had here, to wit, that a suit in ejectment is in personam, and hence not covered by section 8 of the act of March 3, 1875, was not presented in either case, that they are erroneous, and that they have in effect been overruled by the decisions of the Supreme Court in the Ladew and Wetmore Cases. Such I believe to be a fair presentation of plaintiff's position on these motions.

[1] I can say at the outset that, if the right to bring these suits originally in this court depended on section 8 of that act, they could not have been brought here. That section has nothing to do with the right to bring suits in the Circuit Courts of the United States. It has to do with making it so that suits to enforce certain kinds of causes of action, rightfully brought there, may be prosecuted to a hearing and determination.

The jurisdiction of any court of original jurisdiction to hear and determine a suit brought in it depends upon two things. One of these two things is that the plaintiff must have had the right to bring the suit there. The other is that he must have had the right to prosecute it to a hearing and determination after it was brought there. The right to so prosecute it does not follow necessarily from the right to bring the suit in the court. These two things from the standpoint of the court may be put thus. The court must have jurisdiction of the cause of action sought to be enforced in the suit. And it must have jurisdiction of the person of the defendant, either by service of process on him within the territorial jurisdiction of the court, or by his entering his appearance, or, in case such service of process cannot be had because of his absence from such territorial jurisdiction, and the cause of action concerns property located therein, it must have jurisdiction as to such property, either by service of process outside of such territorial jurisdiction, or by constructive service by publication or warning order. Unless the court has jurisdiction of the cause of action sought to be enforced, the plaintiff has no right to bring the suit there. And unless it has acquired jurisdiction of the person of the defendant or of his property, as the case may be, he has no right to prosecute the suit to a hearing and determination after he has brought it there, notwithstanding he had a right to bring it there. Jurisdiction of the cause of action sought to be enforced in the suit or the right to bring the suit in the court consists of two elements. The character thereof must be of the kind, jurisdiction of which or the right to bring suit to enforce which in the court is conferred by the statute. This is what has been termed "essential jurisdiction." It cannot be enlarged by consent of the parties. The other element is that the court must be that one of the several co-ordinate courts differing only in the territory covered by them—i. e., in their territorial jurisdiction—where the suit to enforce the cause of action is required or permitted to be brought. In other words, the suit must be laid in the proper venue.

This element is not essential to jurisdiction. It exists only for the benefit of the defendant, and can be waived by him. If the suit is of such a nature that it can be brought in another of such co-ordinate courts than the one in which it is permitted to be brought, and is so brought, the court where it is brought has jurisdiction of the cause of action notwithstanding the suit is improperly brought there if the defendant consent to its remaining there. What has been thus said of courts of original jurisdiction generally is true of the Circuit Courts of the United States. In order that any one of those courts may have jurisdiction to hear and determine a suit brought there, it is essential that the plaintiff had the right to bring the suit there; i. e., that the cause of action thereby sought to be enforced be of the kind jurisdiction of which is conferred by statute on such courts, and that, there being no waiver, it be one of the several Circuit Courts of the United States where the suit is permitted to be brought, and, further, that the plaintiff has the right to prosecute the suit in that court after it has been brought there by the court's having acquired jurisdiction of the person of the defendant or of the property as the case may be.

Now, section 8 of the act of March 3, 1875, as I view it, has nothing whatever to do with the first of these two things which are essential in order that a Circuit Court of the United States may have jurisdiction to hear and determine a suit brought in it; i. e., it has nothing whatever to do with the plaintiff's right to bring a suit therein. It neither prescribes the character of causes of actions, suits to enforce which may be brought in such courts and which they have the right to hear and determine, nor the particular courts in which such suits may be brought. It determines neither essential jurisdiction nor venue. In the case of Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69, Mr. Justice Brown said:

"It is entirely true that section 8 of the act of 1875 * * * does not enlarge the jurisdiction of the Circuit Court. It does not purport to do so."

The bearing of the section is in relation to the second of the two things which are essential in order that a Circuit Court of the United States may have jurisdiction to hear and determine a suit brought in it, i. e., it concerns solely the right to prosecute a suit rightfully brought in such court after it has been brought when jurisdiction of the person of the defendant cannot be acquired because of his absence from the territorial jurisdiction of the court and his failure to enter his appearance, and the cause of action sought to be enforced thereby concerns property located within such jurisdiction. It provides process for acquiring jurisdiction of such property. What it provides for is termed "substituted service of process." An order is to be made directing the absent defendant to appear, plead, answer, or demur. This is to be served on him wherever he may be found, and also upon the person or persons in possession or charge of the property sought to be affected, if any there be. Where such personal service upon the absent defendant is not practicable, the order is to be published in the manner required by the section. Such is the sole function of the statute. It has none other. It is a process statute, and not otherwise a jurisdictional statute. Judge Clark put the matter right in the case

of Tug River Coal & Salt Co. v. Brigel, 67 Fed. 625, 14 C. C. A. 577, when he said:

"The act simply allows substituted service in certain cases where the court has jurisdiction, and does not purport to change or modify the law as to jurisdiction."

Hence I say that, if the right to bring these suits originally in this court depended on this section, they could not have been brought here. This being so, it has no bearing here whatever, not even in its true function as a process statute. It has no such bearing, even if applicable, because not needed, inasmuch as jurisdiction of the person of the defendant was acquired by due service of process on its statutory agent before the removal of these suits from the state court to this court. Were that not so, it could have no application to the suit in trespass nor to the suit in ejectment, in so far as it sought to recover damages for the wrongful detention of the land sought to be recovered. Such suits are not within the terms of the section, and possibly could not constitutionally have been made so. It is not certain that they could not. It is true that a money judgment can be based only upon actual service of process within the territorial jurisdiction of the sovereignty which created the court. But the jurisdiction of the United States is as wide as its territory. As to whether in that contingency it would have had application to the suit in ejectment, in so far as it sought to recover possession, is questionable. This is so, not because it could not constitutionally have been provided that recovery of possession of land in a suit in ejectment could be had on such service. The case of Freeman v. Alderson, 119 U. S. 185, 7 Sup. Ct. 165, 30 L. Ed. 372, cited by counsel for plaintiff, is not an authority to the effect that it could not have been. It is rather an authority to the contrary, for the opinion says that "service by publication may suffice for the exercise of the jurisdiction of the court over the property as far as to try the right to its possession." It was there held only that a personal judgment for costs in a suit against an absent or nonresident defendant to recover possession of land cannot be rendered on default where the defendant has not been personally served with process within the territorial jurisdiction of the court. It is so, because it is not entirely clear that the suit is within the terms of the section and that in two particulars. One is, as to whether the section has application to suits removed from the state court to a Circuit Court of the United States. In the case of Woolridge v. McKenna (C. C.) 8 Fed. 650, Judge Hammond held that it applied only to a suit commenced in such Circuit Court, and that it did not apply to one removed there. In the case of Gillespie v. Pocahontas Coal & Coke Co. (C. C.) 162 Fed. 742, it was held otherwise. The other particular in which it is not entirely clear that the suit in ejectment, in so far as it seeks recovery of possession, is within the terms of the section is, as to whether it is a suit to enforce a legal claim to real property within the meaning of the section. In the case of Staffan v. Zeust, supra, cited and relied on by plaintiff's counsel, it was held that such a suit was not covered by a substantially similar statute providing for substituted service and publication applicable alone to

the District of Columbia. And it would seem that there is not as much need for 'such a statute covering a suit in ejectment as suits in rem or quasi in rem. The relief granted in a suit in ejectment is a recovery of possession only. If the possession of the land is vacant, the plaintiff can voluntarily take possession. If it is not, he can sue the party in possession. He need not sue the owner. Possibly some difficulty might arise here if the owner was in possession by agent, and not by tenant. By directing attention to these considerations against a suit in ejectment being within the statute, I do not mean to intimate that I think it is not. I merely desire to point out that the matter is questionable. The necessities of these cases do not call for a decision of the question by me.

It is thus seen how utterly foreign section 8 of the act of March 3, 1875, about which so much has been said by counsel, is to these cases. It has nothing to do with the question whether either of these suits could have been originally brought in this court; and, even if it had a limited bearing on these suits as a process statute, it is not needed, as there has been personal service of process.

[2] If, then, these suits could have been originally brought here, we must look elsewhere than to this section for such right, and it cannot be found elsewhere than in section 1 of the act of 1887–88, the main act conferring jurisdiction on the Circuit Courts of the United States, where counsel for plaintiff will hardly tolerate the idea that it is possible to find it. And it must be conceded that it is essential that this section should affirmatively confer such right. What, then, is the thought contained in that section? For whatever that thought is that is what it provides. To grasp that thought, and to present it lucidly, will require entering into some detail, and may call for some deep thinking. The section is composed of two sentences, and the second sentence of three clauses. What we have to do with is the first sentence and the second or middle clause of the second sentence. The first and last clauses of the second sentence have no bearing here.

The first sentence is affirmative. It provides that the Circuit Courts of the United States shall have original cognizance of five different kinds of civil suits, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000. The first kind is distinguished by the subject-matter of the suit, in being one "arising under the Constitution or laws of the United States, or treaties made or which shall be made under their authority." The other four kinds are alike in that they are distinguished by the parties to them. They are those where "the United States are plaintiffs or petitioners," those "in which there shall be a controversy between citizens of different states," those in which there shall be "a controversy between citizens of the same state claiming land under grants of different states," and those in which there shall;be "a controversy between citizens of a state and foreign states, citizens or subjects." This sentence, then, has in view the Circuit Courts of the United States—indeed, its view is limited thereto—and it prescribes the character of civil suits of which they shall have jurisdiction. It confers such jurisdiction and none other upon them. Under and by virtue thereof, therefore, each Circuit Court of

the United States has original jurisdiction of any suit of either character mentioned therein.

The second clause of the second sentence is negative. It is made up of two subordinate clauses. According to Mr. Justice Field in Wilson v. Western Union Telegraph Co. (C. C.) 34 Fed. 561, the first of these two clauses is "a general provision" and the second "a proviso." This nomenclature was followed by Mr. Chief Justice Fuller in McCormick v. Walthers, 134 U. S. 41, 10 Sup. Ct. 485, 33 L. Ed. 833, and by Mr. Justice Gray in Re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402. In the case of G., H. & S. A. Ry. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248, Mr. Justice Brown characterized the one as a provision of "universal application" and the other as "an exception." The first of these two clauses is in these words:

"And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant."

As Mr. Justice Gray puts it in Shaw v. Quincy Mining Co., supra, this clause "forbids" any suit being brought elsewhere. The second one covering the "proviso" or "exception" is in these words:

"But where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or defendant."

This second clause of the second sentence has in view the parties to the suit, and its view is limited thereto. The person forbidden is the plaintiff, though he is not mentioned. He is forbidden, so far as the terms of the clause are concerned, to bring any suit of the kind mentioned in the first sentence anywhere else than in the district of which the defendant is an inhabitant, except that, in a suit where the jurisdiction is founded only on diversity of citizenship, he may bring it in the district of the residence of either the plaintiff or defendant. He is so forbidden out of regard, i. e., for the benefit of the defendant. The plaintiff being thus in terms forbidden to bring any such suit elsewhere, it apparently follows that the Circuit Court of the United States whereof the defendant is the inhabitant has sole jurisdiction of any suit brought by him, except where the jurisdiction is grounded on diversity of citizenship, in which case that of either the plaintiff or defendant is a resident and none other has jurisdiction.

These two parts of section 1 which I have been considering are thus seen to cover the two elements of the first of the two things essential for a Circuit Court of the United States, to have jurisdiction to hear and determine a suit in it to which I have heretofore referred. The first sentence fixes its essential jurisdiction and the second clause of the second sentence determines the venue. Concerning them, Mr. Chief Justice Fuller in the case of Sweeney v. Carter Oil Co., 199 U. S. 252, 26 Sup. Ct. 55, 50 L. Ed. 178, had this to say:

"The clause vesting jurisdiction should not be confounded with the clause determining the particular courts in which the jurisdiction must be exercised."

In the opinions of the Supreme Court the first sentence is referred to as being concerned with the "general jurisdiction" of the Circuit Court, and it is characterized as a "grant of general jurisdiction." In the case of Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635, Mr. Justice Miller characterizes it as describing—

"the jurisdiction common to all the Circuit Courts of the United States as regards the subject of the suit, and as regards the character of the parties, who, by reason of such character, may either as plaintiffs or defendants sustain suits in the Circuit Courts."

In referring to the second clause of the second sentence, he said that it "undertakes to define the jurisdiction of each one of the several Circuit Courts of the United States with reference to its territorial limits." Mr. Justice Gray in Shaw v. Quincy Mining Company, supra, in referring to a like provision in another federal statute, said that its effect was "to restrict and distribute jurisdiction." And in the case of In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211, in speaking of the words of the clause in question, he said:

"Their object is to distribute among the particular districts the general jurisdiction fully and clearly granted in the earlier part of the section."

Mr. Justice White in Macon Grocery Co. v. Atlantic C. L. Ry. Co., 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300, where the claim of nonjurisdiction was based on the ground that the suit was one that had to be brought in the district of which the defendants were inhabitants and had not been, treated the noninhabitancy of the defendants as affecting the jurisdiction of their persons, though each one had been duly served with process  He said:

"The basis of the claim that the Circuit Court had not acquired jurisdiction over the person of the defendants was that none of the defendants was an inhabitant of the district in which the suit was brought."

And in stating his conclusion he said that the Circuit Court for that reason "was without jurisdiction of the persons of the defendants." As to whether it is correct to say that noninhabitancy in such cases affects the jurisdiction of the person of defendant may be questionable. But the requirement that the suit should be so brought, being for the benefit of the defendant, is subject to waiver by him. This has been held by the Supreme Court in quite a number of cases. Ex parte Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904; Western Loan Co. v. Butte & Boston M. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

Hereafter in referring to the first sentence of the section in question I will characterize it as the general grant and the second clause of the second sentence as the distributing clause.

What has thus far been said concerning the two has been for the purpose of clearing the way for deeper thinking. It is essential that we go deeper into the relation between the general grant and the distributing clause than what lies on the surface. The function of the latter, as we have seen, is solely to distribute amongst the several Circuit Courts of the United States the jurisdiction con-

ferred on them all alike by the general grant. If, then, upon close examination it should turn out that the distributing clause does not distribute all the jurisdiction conferred by the general grant, what is to become of the excess that has not been distributed? Is it annulled because it has not been distributed, or is it to be treated as distributed in accordance with fundamental juridical principles applicable where there is no statutory provision making distribution; i. e., fixing venue? There is no escaping the conclusion that the latter of these two alternatives is the sound one. If the first section of the act of 1887–88 had been confined to the general grant—i. e., if it had not contained the distributing clause—and there was no distributing clause elsewhere, it could not possibly have been urged that the general grant was of no value. The sole effect of such a condition of things would have been that the jurisdiction thus generally conferred would have to be treated as distributed in accordance with such principles. It would have to be taken that Congress intended such a distribution. We find this very condition of things existing in relation to the jurisdiction of the Circuit Court of the United States in admiralty. Section 711, Rev. Stat. (U. S. Comp. St. 1901, p. 577), confers exclusive jurisdiction in admiralty on such courts. There is no statute distributing such jurisdiction amongst them. It was therefore held in the case of In re Louisville Underwriters, 134 U. S. 488, 10 Sup. Ct. 587, 33 L. Ed. 991, that a suit in admiralty could be brought in any district where process could be served on the defendant. A similar condition of things in relation to the exclusive jurisdiction of those courts as to suits for infringement of patents and copyrights existed until Act March 3, 1897, c. 395, 29 Stat. 695 (U. S. Comp. St. 1901, p. 589). Bowers v. Atlantic G. & P. Co. (C. C.) 104 Fed. 887.

If, then, there had been no distributing clause in section 1, or elsewhere, the jurisdiction conferred by the general grant would have to be treated as so distributed, and it necessarily follows that, if the distributing clause does not distribute all the jurisdiction conferred by the general grant, such as is not distributed thus should be treated also as so distributed. A direct authority in support of this position and of the further position that the distributing clause of section 1 does not distribute all the jurisdiction conferred by the general grant is to be found in the case of In re Hohorst, supra. That was a suit in the Circuit Court of the United States for the Southern District of New York by a New York citizen against a German corporation doing business in New York. The essential jurisdiction was founded on the ground that the suit was a civil suit between a citizen of a state and a citizen of a foreign state. The defendant, though doing business in the state where the suit was brought, was not an inhabitant thereof, as held in Shaw v. Quincy Mining Company, supra. It was not an inhabitant of any state. The bringing of the suit in that court, therefore, was not forbidden by the general provision of the distributing clause. It had application only to suits against inhabitants of some state, which was not the case with that suit. The defendant having been served within the district, and jurisdiction of its person having been thus acquired, it was

held that the court had jurisdiction under and by virtue of the general grant.   Mr. Justice Gray in referring to the general grant said:

"The intention of Congress is manifest * * * to vest in the Circuit Court of the United States full and effectual jurisdiction, as contemplated by the Constitution, over each of the classes of controversies above mentioned."

The question therein he said was "how far the jurisdiction thus conferred * * * is affected by the subsequent provisions of the same section."   Then, as to the general provision of the distributing clause, he said, a part of what is here quoted having already been quoted in another connection, as follows:

"These words evidently look to those persons only who are inhabitants of some district within the United States. Their object is to distribute among the particular districts the general jurisdiction fully and clearly granted in the earlier part of the same section, and not to wholly amend or defeat that jurisdiction over any case comprehended in the grant. To construe the provision as applicable to all suits between a citizen and an alien would leave the courts of the United States open to aliens against citizens, and close them to citizens against aliens. Such a construction is not required by the provision, and would be inconsistent with the general intent of the section as a whole."

In the case of In re Keasbey & Mattison Co., supra, Mr. Justice Gray said with reference to the Hohorst Case that:

"The decision was that the act of 1888 forbidding suits to be brought in any other district than that which the defendant is an inhabitant had no application to an alien or a foreign corporation sued here, * * * and therefore such a firm or corporation might be so sued by a citizen of a state of the Union in any district in which valid service could be made on the defendant."

He further stated the ground of the decision to be that the suit was "not within the scope or intent of the provision requiring suit to be brought in the district of which the defendant is an inhabitant." To the same effect is the case of Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964.

Shortly after the decision in the Hohorst Case, the case of Galveston, etc., Ry. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248, came before the Supreme Court.   It involved the question whether a suit by an alien against a citizen of a state was like a suit by a citizen of a state against an alien, in that it might be brought in any district where process could be served on defendant.   It looked like that, if the citizen of a state could follow up an alien and sue him wherever he might be found, an alien should have the same right to follow up the citizen of a state and sue him wherever he might be found; or, in other words, that it was a case where the homely saying that "what is sauce for the goose is sauce for the gander" should be applied.   And this idea seems to have caught Mr. Justice Jackson and Mr. Justice Harlan, who dissented.   But the Supreme Court held that a suit by an alien can only be brought in the district whereof the defendant is an inhabitant, because such a suit is clearly within the intent and scope of the general provision of the distributing clause, whereas a suit against an alien is not.

It is clear, therefore, that the distributing clause does not distribute all the jurisdiction conferred by the general grant.   It does not

distribute any of such jurisdiction as to a defendant who is not an inhabitant of some state. And such jurisdiction, not so distributed, is to be treated as distributed in accordance with such principles. How, then, is it as to such jurisdiction as to a defendant who is an inhabitant of some state? Does the distributing clause distribute all such jurisdiction? Or, limiting ourselves to the jurisdiction of suits between citizens of different states, covered by the proviso or exception of the distributing clause, does that proviso or exception distribute all the jurisdiction of the Circuit Courts of the United States over civil suits between citizens of different states? If it does not, so much as it does not distribute is not affected by the proviso or exception of that clause and is to be treated as distributed in accordance with fundamental juridical principles. It must be conceded that the general grant confers jurisdiction of suits in ejectment and suits in trespass to recover damages for cutting down and removing timber and converting same to one's own use between citizens of different states; for it confers jurisdiction of all civil suits between citizens of different states and suits in ejectment and in trespass to so recover are civil suits. Are such suits then within the proviso or exception of the distributing clause; i. e., are they thereby distributed? Here I will deal with the two kinds of suits separately. Are suits in ejectment covered by that proviso or exception? If so, they are distributed to the district of either the plaintiff or defendant. But that cannot be. From "inevitable necessity" a suit in ejectment cannot be brought anywhere else than in the district where the land sought to be recovered lies. The suit in ejectment which we have here could not have been brought in either the state of New York, the state of plaintiff's residence, or in the state of Virginia, that of defendant's residence. It could only have been brought in this district. It is clear, then, that suits in ejectment are not within the proviso or exception of the distributing clause. They were not distributed thereby. Then how is it as to suits in trespass like the one we have here? Such suits are suits of a local nature, as well as suits in ejectment, though they are not so of "inevitable necessity." Mr. Chief Justice Marshall in Livingston v. Jefferson, Fed. Cas. No. 8,411, thus stated the distinction between transitory actions and those of a local nature:

"The distinction taken is that actions are deemed transitory where transactions on which they are founded might have taken place anywhere, but are local where their cause is in its nature necessarily local."

In the American note by Judge Hare to the case of Mostyn v. Fabrigas, 1 Smith's Leading Cases, part 2, p. 1071, it is said:

"All the books agree that, when the subject-matter in litigation is ownership or possession of real estate, it is essentially local, and the remedy must be sought in the state or county where the land is situated. This is equally true of trespass and ejectment; the wrong complained of being substantially the same in both and differing only in being prolonged. * * * A judgment in trespass may be as conclusive of the right to real estate as a judgment in a writ of entry or ejectment, and should therefore only be pronounced by a tribunal which can take judicial cognizance of the statutes, principles, and usages constituting the lex loci rei sitæ which must ultimately prevail where immovable property is concerned. If a foreign court may adjudge such questions, it might mulct the defendant for damages for an act which was subsequently ascertained to be a legitimate exercise of the authority implied in ownership."

But as suits in trespass like the one we have here, though of a local nature, are not so by "inevitable necessity," as is the case with suits in ejectment, it is not inconceivable that Congress might not have intended by the proviso or exception of the distributing clause that such suits when between citizens of different states, and the jurisdiction is founded only on diversity of citizenship, should be brought only in the district of the residence of either the plaintiff or defendant. It is clear, however, that it did not so intend. In the case of Casey v. Adams, 102 U. S. 66, 26 L. Ed. 52, Mr. Chief Justice Waite said:

"The distinction between local and transitory actions is as old as the actions themselves, and no one has ever supposed that laws which prescribed generally where one should be sued included such suits as were local in their character either by statute or the common law, unless it was expressly so declared."

The case of Livingston v. Jefferson, heretofore referred to, arose under the judiciary act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 73). It conferred jurisdiction on Circuit Courts of the United States of civil suits between a citizen of the state where the suit is brought and the citizen of another state, and provided that no such suit should be brought in any other district than that whereof the defendant was an inhabitant, or in which he should be found at the time of serving the writ. That case was a suit by a citizen of New York against Mr. Jefferson, a citizen of Virginia. It was brought in Virginia, of which district the defendant was an inhabitant, and where he was found. But it was a suit for a trespass on land committed in Louisiana whilst it was a territory, but which was then a state. It was held that the court had no jurisdiction, though it was recognized that there was no likelihood of Mr. Jefferson ever being in the state of Louisiana so that he could be sued there. In the case of Northern Indiana Ry. Co. v. Michigan Central Ry. Co., 15 How. 233, 14 L. Ed. 674, Mr. Justice McLean said:

"But, wherever the subject-matter in controversy is local, and lies beyond the limit of the district, no jurisdiction attaches to the Circuit Court sitting in it. An action of ejectment cannot be maintained in the district of Michigan for land in any other district. Nor can an action of trespass quare clausum fregit be prosecuted where the act complained of was not done in the district. Both of these actions are local in their character, and must be prosecuted where the process of the court can reach the locus in quo."

The case of Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 Sup. Ct. 771, 39 L. Ed. 913, arose under the act of March 3, 1875. It was a suit in trespass exactly like the suit in trespass we have here. The trespass was committed in the state of West Virginia. The suit was brought, however, in the Circuit Court of the United States for the Southern District of Ohio by a New Jersey citizen against an Ohio corporation. The requisite diversity of citizenship existed, and the suit was brought in the district whereof the defendant was an inhabitant, and where it was found. It was held that the lower court was without jurisdiction to hear and determine the case. Mr. Justice Gray said:

"By the law of England and those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land like an action to recover the title or the possession of the land itself is a local action, and can only be brought within the state in which the land lies."

And again:

"The entire cause of action is local. The land alleged to have been trespassed upon lies in West Virginia; the action could not be maintained in Ohio. The Circuit Court of the United States sitting in Ohio had no jurisdiction of the cause of action."

These authorities make sure that under the statutes as they existed prior to the act of 1887–88 no suit of a local nature was within their distributing or venue clauses. There is no possible ground for claiming that this is not true as to the venue or distributing clause of that act. Direct authority in support of the position that it is true as to suits of a local nature by "inevitable necessity" coming within section 8 of the act of March 3, 1875, and covered also by the general grant, is to be found in the cases of Mellen v. Moline Ironworks, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178; Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69; Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201; Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Citizens' S. & T. Co. v. Ill. C. Ry. Co., 205 U. S. 46, 27 Sup. Ct. 425, 51 L. Ed. 703. The suit in Mellen v. Moline Iron Works was a suit brought in the Circuit Court for the Northern District of Illinois by a Wisconsin corporation against an Illinois corporation and an Ohio citizen to remove an incumbrance and cloud on the property of the Illinois corporation in said district held by the Ohio citizen. The suit in Greeley v. Lowe was a suit brought in the Circuit Court for the Northern District of Florida by a New Hampshire citizen against Florida citizens and Georgia and other states citizens for the partition of real estate in Florida. The suit of Dick v. Foraker was a suit brought in the Eastern district of Arkansas by an Ohio citizen against an Illinois citizen to remove a cloud from the title to certain real estate in that district. The suit of Jellenik v. Huron Copper Mining Co. was a suit brought in the Circuit Court for the Western District of Michigan by citizens of other states than Michigan against a Michigan corporation and Massachusetts citizens to remove the cloud from certain of the stock of the corporation claimed by the Massachusetts citizens held to be personal property located in that district. And the suit in Citizens' S. & T. Co. v. Ill. C. Ry. Co. was a suit brought in the Eastern district of Illinois by an Ohio corporation against three Illinois corporations, inhabitants of the Northern, and not the Eastern, district, and a New York corporation, for the cancellation of deeds and leases covering real property in the Eastern district. In each of these cases there was diversity of citizenship, but in neither was the suit brought in the district of either the plaintiff's or defendant's residence within the construction of those words in Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635. Each suit, however, was a suit of a local nature, being such from "inevitable necessity," and was brought in the district where the property concerned was located. It may be thought that jurisdiction was upheld in these cases because the suits came within section 8 of the act of March 3, 1875. It is certain that in none of them save Greeley v. Lowe is mention made of any other basis of jurisdiction than section 8, and in that case it does not seem to have been made

as clear as it might have been that some reliance was not had on that section for essential jurisdiction and proper venue. I can account for the prominence of section 8 in these cases on no other ground than that except in Greeley v. Lowe there was no question made as to the essential jurisdiction and venue. In the case of Jellenik v. Huron Copper Mining Co., Mr. Justice Harlan said:

"No objection is made as to the jurisdiction of the court so far as it rests upon the diverse citizenship of the parties."

The sole question considered, except in Greeley v. Lowe, was as to the jurisdiction of the property of the nonresident defendant or defendants sought to be affected. This involved only section 8. But, as that jurisdiction was as necessary as essential jurisdiction and proper venue to the right to hear and determine the suit, there was no occasion to use any distinguishing words in referring to the jurisdiction under consideration. It was then jurisdiction of the property, and not essential jurisdiction or proper venue, that was upheld in these cases on the ground of section 8. Essential jurisdiction was not upheld on that ground. It could not have been upheld on that ground in view of the statement of Mr. Justice Brown in Greeley v. Lowe heretofore quoted to the effect that section 8 did not "enlarge the jurisdiction" and did not "purport to do so." Nor was venue. It followed necessarily that the suits were brought in the proper district. Essential jurisdiction and proper venue existed on the ground that the suits therein involved were within the general grant, and not within the distributing clause of section 1 of the act of 1887–88, and that they were not within the distributing clause because they were suits of a local nature. That this is so appears, though somewhat obscurely, from the case of Greeley v. Lowe—the only one of them in which the question of essential jurisdiction or proper venue seems to have been raised. It came to be raised there by the citation of the case of Smith v. Lyon, supra, as an authority against the right of the Circuit Court to hear and determine the cause. That was a suit brought in the Eastern district of Missouri by a Missouri citizen and an Arkansas citizen against a Texas citizen. It was a suit on a contract, and hence transitory. It is not stated, but I take it for granted, that jurisdiction of the person of the defendant had been acquired by actual service of process on him. Proper venue alone was involved as diversity of citizenship existed which was sufficient for essential jurisdiction. It was held that the suit was within the proviso of the distributing clause, and hence the venue was not proper. This was so, because, according to that proviso, suits where the jurisdiction is founded on diversity of citizenship only are to be brought in the district of the residence of the plaintiff or defendant, and this required both plaintiffs to be residents of the Eastern district of Missouri, which was not the case. In the case of Greeley v. Lowe the plaintiff did not reside in the district where the suit was brought. Some of the defendants, but not all of them, did. The case of Smith v. Lyon applied, therefore, unless the fact that it was a suit of a local nature made a difference. It was held that it did. Mr. Justice Brown said:

191 F.—58

"A brief review of the history of corresponding provisions of prior acts will show that it has never been supposed that the federal courts did not have jurisdiction of local actions in which citizens of different districts were defendants, and, in fact, provision was expressly made by law for such a contingency."

He here refers to the provision made by the act of 1839 (Act Feb. 28, 1839, c. 36, 5 Stat. 321) for proceeding without having the defendant, who is not a resident of the district where suit is brought, before the court if he is not an indispensable party, and by the act of 1872 (Act June 1, 1872, c. 255, 17 Stat. 196), subsequently with some modifications becoming section 8, for bringing him before the cause by substituted service and publication. Then, after stating what I have heretofore quoted as to section 8 not enlarging or purporting to enlarge the jurisdiction of the Circuit Court, to indicate the true foundation of the court's jurisdiction, he says:

"Jurisdiction was conferred by the first section of the act of 1888 of all suits of a civil nature exceeding $2,000 in amount 'in which there shall be a controversy between citizens of different states,' and this implies that no defendant shall be a citizen of the same state with the plaintiff, but otherwise there is no limitation upon such jurisdiction."

But though he did not think that section 8 had any bearing on the essential jurisdiction of the Circuit Court—i. e., the general grant of section 1—he does seem to think that it had some relation to the distributing or venue clause. He continues as follows:

"Section 8 of the act of 1875 saved by section 3 of the act of 1888 does, however, confer a privilege upon the plaintiff of joining in local action defendants who are nonresidents of the district in which the action is brought and calling them in by publication, thus creating an exception to the clause of section 1 that no civil suit shall be brought in any other district than that of which defendant is an inhabitant."

He thus says that section 8 is an exception to the distributing clause of section 1. With due deference I would submit that there is no relation between the two. They deal with separate matters. Section 8 has to do with jurisdiction of the property involved. The distributing clause of section 1 has to do with the venue. The true ground upon which the doctrine of Smith v. Lyon did not apply was that the suit was covered by the general grant, and not covered by the distributing clause, as the suit in Smith v. Lyon was. The venue was not dependent on section 8 or on any statute. Essential jurisdiction existing venue was fixed by the fundamental juridical principle that local suits shall be brought in the district where the property that they concern or out of which they arise is located.

I think, then, that it must be accepted that these two suits come within the general grant of section 1, and that they do not come within the distributing clause thereof, and that, this being so, they could by virtue of the first section have been brought originally in this court. It will be noticed, therefore, that jurisdiction essentially and in the matter of venue of these causes if originally brought here would have existed by virtue of section 1, not because such jurisdiction is not forbidden by that section, as counsel for plaintiff apprehend is the force of the argument by which jurisdiction thereunder is upheld, but because essential jurisdiction is granted by the general grant there-

of, and bringing of the suits in this district is not forbidden by the distributing clause. The section so far as applicable here is precisely the same as if it had expressly provided that Circuit Courts of the United States should have original jurisdiction of suits between citizens of different states, but no such suit, not of a local nature, shall be brought elsewhere than in the district of the residence of either the plaintiff or defendant. Had the statute been so worded, no one would ever have thought of raising the question as to whether either of these two suits could have been originally brought here. They are between citizens of different states, and they are of a local nature. They come within the first branch of the section as thus put, and not within the second. And why should Congress have bothered itself with fixing the venue of suits of a local nature? Their very nature itself fixes their venue. So it is that Congress has never undertaken to fix the venue of suits of a local nature except where the defendant resides in a different district of the same state from that in which the suit is brought, or where the property which is the subject-matter of the suit is located partly in one district and partly in another within the same state. This it did by sections 741 and 742 of Revised Statutes (U. S. Comp. St. 1901, p. 588), re-enacted by sections 54 and 55 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101, 1102). Those statutory provisions presuppose the soundness of the position I have here taken. That position finds support so far as the suit in ejectment is concerned in the cases of Spencer v. Kansas City Stockyards Co., supra, and Elk Garden Co. v. Thayer Co., supra, though I understand Judge Phillips in the former case based his holding solely on the ground that such suit is within section 8 of the act of March 3, 1875.

It remains to consider here the bearing of the Ladew and Wetmore Cases in 218 U. S., 31 Sup. Ct., 54 L. Ed., on that position. Each of these suits was brought in the Eastern district of Tennessee. The plaintiffs in the Ladew Case were New York and West Virginia citizens, and the defendant a New Jersey corporation and a British corporation, each doing business in Tennessee, and having an agent on whom process could be served. Both defendants were duly served with process. The court had jurisdiction, therefore, of their persons. There was no question as to the jurisdiction so far as the British corporation was concerned; it being a foreign corporation. So far, the case came within the Hohorst Case. As the case came to the Supreme Court, it involved the question only as to the jurisdiction. So far as the case was between the plaintiffs and the New Jersey corporation diversity of citizenship existed, so that there was no question as to essential jurisdiction. The suit came within the general grant of section 1 of the act of 1887-88. The only question under that act, therefore, was as to the venue, as the suit was not brought in the district of the residence of the plaintiff or defendant. The plaintiffs were the owners of timber lands in Georgia. The defendants were the owner and operator of copper mines and smelters in Tennessee. The plaintiffs claimed that the operation of the smelters was a nuisance and injuriously affected their timber, and the suit was brought to obtain an injunction against the continuance of the nuisance and to obtain its abatement. The Wetmore Case was exactly like the Ladew Case, ex-

cept that the plaintiff was a Rhode Island citizen and his timber lands were located in Tennessee. So that the property injured and the nuisance were both in the district where the suit was brought. It was held that neither suit was properly brought in the lower court. It was assumed that the cases came within the distributing clause of section 1 of the act of 1887–88, and, that being so, it was assumed, also, that no right to bring them in the lower court was conferred by that section. The only basis of jurisdiction considered was section 8 of the act of March 3, 1875, and, it being held that the suits were not within that section, the right to so bring them was denied. The claim that they were within section 8 was farfetched and desperate, and the help it could afford was not needed, as the defendant was before the court by actual service of process. More significance seems to have been attached to it than it was entitled to if our position as to its real character is correct. The bearing of these cases here is in the assumption that the suits there involved came within the distributing clause of section 1 of the act of 1887–88, and were forbidden by it to be brought in the lower court. If those suits were suits of a local nature, then those cases are direct authorities against the position I have taken at least as to the suit in trespass. And within the definition of Mr. Chief Justice Marshall in the case of Livingston v. Jefferson, heretofore quoted, they were suits of a local nature. Their cause was in its nature necessarily local. Judge Marshall held that suits whose cause was necessarily local as well as suits which in themselves were necessarily local were suits of a local nature, and that that suit was therefore such a suit because both propositions were so well settled at common law that he felt constrained to accept them and act accordingly. He, however, expressed a disapproval of the doctrine that that suit was of a local nature. Since then in some jurisdictions it has been held that such a suit was not local but transitory. In the case of Huntington v. Attrill, 146 U. S. 669, 13 Sup. Ct. 228, 36 L. Ed. 1123, Mr. Justice Gray said:

"Proceedings in rem to determine the title to land must necessarily be brought in the state within whose borders the land is situated, and whose courts and officers alone can put the party in possession. Whether the actions to recover pecuniary damages for trespass to real estate 'of which the cause' as observed by Mr. Westlake (Private International Law [3d Ed.] p. 213) 'could not have occurred elsewhere than where they did occur' are purely local, or may be brought abroad, depends on the question whether they are viewed as relating to the real estate or only as affording a personal remedy. By the common law of England, adopted in most of the states of the Union, such actions are regarded as local, and can be brought only where the land is situated. Doulson v. Matthews, 4 T. R. 303; McKenna v. Fisk, 1 How. 241 [11 L. Ed. 117]. But in some states and countries they are regarded as transitory like other personal actions, and whether an action for trespass on land in one state can be brought in another state depends on the view which the latter state takes of the nature of the action."

This latter proposition being true, it would seem that a Circuit Court of the United States in a state where such a suit or any other suit that might otherwise be held to be of a local nature was regarded as not of such a nature should act in accordance with such position. That it should so do was held by the Eighth Circuit Court of Appeals in the case of Peyton v. Desmond, 129 Fed. 1, 63 C. C. A. 651. That was a suit brought in the Circuit Court of the United States for

the District of Minnesota. It was a suit by a Wisconsin citizen against Minnesota citizens to recover damages for entering on land in Wisconsin, cutting down timber, sawing it into lumber, and converting same to their own use. It was held to be really a suit to recover damages for the conversion of personal property, to wit, the lumber into which the timber had been sawed after it was cut and was therefore transitory, and not local, under the common-law distinction, and might be brought anywhere. It was so held upon the authority of the Supreme Court in Stone v. United States, 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127, where such a suit was distinguished from the suit in the case of Ellenwood v. Marietta Chair Co., supra. But it was also held that even if the suit be regarded as one for the recovery of damages for injury to land, and hence local at common law, yet it was cognizable by the lower court. This was so held on the ground that in Minnesota such a suit is not of a local nature as had been held in the case of Little v. Chicago, etc., Ry. Co., 65 Minn. 48, 67 N. W. 846, 33 L. R. A. 423, 60 Am. St. Rep. 421. Judge Van Devanter said:

"By the common law of England an action for the recovery of damages for the injury to land is local, and can be brought only where the land is situated. This is the law in most of the states of the Union. Chilly, Pd. 281; Shipman, Com. Pl. (2d Ed.) 201, 380; Cooley on Torts, 471; Livingston v. Jefferson, 15 Fed. Cas. 660, No. 8,411; McKenna v. Fisk, 1 How. 241, 11 L. Ed. 117; Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 Sup. Ct. 771, 39 L. Ed. 913. The operation of this common-law rule has been much restricted by legislation in England (British South Africa Co. v. Compania de Mocambigue [1893] App. Cas. 602), and in some of the states (15 Fed. Cas. 665 note, Genin v. Grier, 10 Ohio, 209, 214). There are some states in which the rule never prevailed. Holmes v. Barclay, 4 La. Ann. 63. The matter is essentially one of state policy or local law. As was said by Mr. Justice Gray in Huntington v. Attrill, 146 U. S. 657, 669, 13 Sup. Ct. 224, 228 (36 L. Ed. 1123): 'Whether actions to recover pecuniary damage for trespass to real estate * * * are purely local or may be brought abroad depends upon the question whether they are viewed as relating to the real estate or only as affording a personal remedy. * * * And whether an action for trespass to land in one state can be brought in another state depends on the view which the latter state takes of the nature of the action.' In Minnesota an action for pecuniary damages for trespass to real estate in another state is viewed not as relating to the real estate, but only as affording a personal remedy. It is there deemed to be transitory in nature, and not local. In Little v. Chicago, etc., Ry. Co., 65 Minn. 48, 67 N. W. 846, 33 L. R. A. 423, 60 Am. St. Rep. 421, the Supreme Court of that state in sustaining the jurisdiction of the courts of the state over an action brought to recover damages for injuries to real estate situated in Wisconsin said: 'The reparation is purely personal and for damages. Such an action is purely personal, and in no sense real.'"

And again:

"This action presents a controversy between citizens of different states, and was brought in the district and division of the residence of the defendants. It is of a civil nature, is a common-law action, and the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000. Being also an action which is cognizable in the courts of the state, as before shown, it is equally within the concurrent cognizance of the Circuit Court of the United States within that state."

Now the suits in the Ladew and Wetmore Cases were not of a local nature in Tennessee. However, they may have been elsewhere. I have not investigated the question generally as to suits for or to en-

join nuisances; the latter being the nature of those suits.    Before the bringing of those suits, the Supreme Court of Tennessee had held in a suit brought by the British corporation, one of the defendants in the Ladew and Wetmore Cases, to enjoin the prosecution of suits at law to recover damages to real estate by this same nuisance brought by various individuals amongst whom were Georgia citizens, whose real estate that had been injured was located in those states, that those suits were not of a local nature.    The case is that of Ducktown Sulphur Copper & Iron Co. v. Barnes (Tenn.) 60 S. W. 593.    The lower court in its opinion approved by the Supreme Court said:

"The last and one of the main contentions of complainant is that the actions at law of appellees enjoined by the bill were local actions because they related to land, or an interest in land, and hence they must have been brought in the county and state where the land is situated, and, that being so, the courts of Tennessee had no jurisdiction of such action. We are cited to the following authorities in support of this contention: Roach v. Damron, 2 Humph. 425; Livingston v. Jefferson, 4 Hall. Law J. 78 [Fed. Cas. No. 8,-411]; and other cases and authorities. We cannot subscribe or assent to this contention. The action of appellees for damages do not involve title to land nor the assertion of a right to or an interest in land. The actions are purely actions for damages sustained by virtue of a nuisance operated by the complainant. The action was personal, and not local; and the appellees, although residents of the state of Georgia, and although the injury was done to property in the state of Georgia, had the right to maintain their suits in the courts of Tennessee. Lewis v. Morton, 5 T. B. Mon. [Ky.] 3; Shannon's Code, §§ 4314–4316; Hobbs v. Railroad Co., 9 Heisk, 873–880."

I think, therefore, that there is no room to claim that the decision of the Supreme Court in the Ladew and Wetmore Cases is adverse to the position taken here.    Yet I cannot help but feel that the opinions in the cases are quite unsatisfactory.    They devote too much space to section 8, and none whatever to section 1.    As stated, the claim that the suits were of the character covered by section 8 was far-fetched and desperate, and, even if they were so covered, section 8, in its true function as a process statute, was not needed to enable the lower court to proceed, because jurisdiction of the person of the defendant had been acquired by service of process on the defendant within its territorial jurisdiction, and, that being so, by its very terms section 8 could have no application.    They seem to presuppose that section 8 has to do with the matter of venue, which I submit is not the case.

The main question in the case was whether jurisdiction did not exist by virtue of section 1.    Diversity of citizenship existing and the cases by reason thereof coming within the general grant of that section, that question depended on the subordinate question whether they came within the distributing clause, and this depended on the question, subordinate thereto, whether they were suits of a local nature. If they were, then they were not within the distributing clause (Casey v. Adams, supra), and, being within the general grant, the lower court had jurisdiction.    If they were not, then they were within that clause, and that court did not have jurisdiction.    The suits involved putting a stop to the use of real property which was an injury to other real property to prevent such injury; both properties being within the territorial jurisdiction of the lower court in the Wetmore Case. The suits, therefore, were, as stated, suits of a local nature within

the definition of Mr. Chief Justice Marshall in Livingston v. Jefferson. If that definition was to control, then the lower court had jurisdiction, and its decree should have been reversed. The decisions are to be accounted for on the ground either that such is not the position of the Supreme Court as to what constitutes a suit of a local nature and within its conception of what constitutes such a suit they were not suits of a local nature, or that they were not suits of a local nature according to the law of Tennessee and that law should govern. These matters opened up an interesting line of thought, but they were not dealt with.

Possibly, before leaving the discussion, and in order that there may be no mistake as to my position, I should add this. Undoubtedly section 8 presupposes that the suits covered by it may be brought in the Circuit Court of the United States for the district in which the property sought to be affected is located. But it does no more. It does not confer the right to bring them there. That right exists irrespective of its provisions. It exists because the suits covered by it are all suits of a local nature. The venue of such suits is fixed by their character. And from inevitable necessity suits of a local nature such as those covered by section 8 are can only be brought in the Circuit Court of the United States for the district where the property sought to be affected is located. The sole function of section 8, therefore, is, as already stated, to make it so that suits so brought may be effective by providing process for bringing the defendant before the court and thereby conferring on the court jurisdiction to hear and determine the suits. So regarded section 8 cannot be an exception to the distributing clause of section 1, as stated by Mr. Justice Brown in Greeley v. Lowe, nor should it be construed together with that clause as stated by Mr. Justice Harlan in Ladew v. Tennessee Copper Co. That clause, as we have seen, having no relation to suits of a local nature, whose venue is fixed by their character, it was not necessary to treat section 8 as cutting down or modifying the effect of that clause in order that the Circuit Court of the United States for the district where the property was located might have jurisdiction thereof. Had section 8 never been enacted that court would still have had jurisdiction of suits of that character; i. e., they could rightly have been brought therein. The only trouble arising from its nonexistence would have been in the matter of getting the defendant before the court.

[3] There can be no question that the suit in trespass as well as the suit in ejectment is of a local nature. It is not a suit to recover damages for the conversion of personal property, to wit, the timber after cut or the lumber into which it may have been sawed. It is a suit to recover damages for the injury to the land by cutting the timber and removing it therefrom. The allegation is that the defendant had entered on the land wrongfully, unlawfully, forcibly, and without right so to do, and against the will and consent of the plaintiff has cut down thereon 3,000 valuable oak, poplar, ash, pine, lynn, cucumber, beech, and other timber trees then standing and growing thereon, the property of the plaintiff, and has unlawfully, wrongfully, and forcibly and without right and against the plaintiff's will and

without its consent removed therefrom and converted to its own use said timber trees, all to the damage of the plaintiff and to the injury of its said land in the full sum of $15,000. It is exactly the same kind of suit as that in Ellenwood v. Marietta Chair Co., except that it is not a suit in trespass quare clausum fregit, as it is not alleged in the petition that plaintiff was in possession at the time of the entry on the land. It is a suit brought under section 2361, Kentucky Statutes (section 17, Russell's St.), which is in these words:

"The owner of land may maintain the appropriate action to recover damages for any trespass or injury committed thereon or to prevent or restrain any trespass or other injury thereto or thereon notwithstanding such owner may not have the actual possession of the land at the time of the commission of the trespass."

The petition alleges that the plaintiff is the owner of the land on which the timber was cut. It is on this basis of ownership alone that recovery is sought. The suit therefore involves directly the title to the land. That depends on the laws of Kentucky as laid down by the decisions of its courts and by its statutes. In the case of Scroggins v. Nave, 133 Ky. 793, 119 S. W. 158, Judge Settle said:

"Under section 2361, Ky. Stat., the owner of land, although not in actual possession, may maintain an action for trespass thereon. The word 'owner' appearing in the statute, supra, means one who owns the land by a title deducible from the commonwealth, and by reason thereof superior to any other title by whomsoever held, or by such right of ownership as may be acquired by the actual adverse possession of the land and claiming and using it as his own to a well marked or defined boundary continuously for 15 years."

But there is no room to claim that the suit, even if it had been one in trespass quare clausum fregit, was not one of a local nature. It is so held to be by the Supreme Court and most of the courts of the Union, and I find no intimation in the decisions of the Court of Appeals of Kentucky that it is not such in this state. See the cases of Whitlock v. Redford, 82 Ky. 390; Stillwell v. Duncan, 103 Ky. 59, 44 S. W. 357. As, then, these suits could have been originally brought in this court, they were removable thereto.

I cannot close without expressing my indebtedness to counsel for the aid they have given me in disposing of the motions.

The motions to remand are overruled.